In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00285-CV**
_____

**GODADDY.COM, LLC, Appellant**

**V.**

**HOLLIE TOUPS, ET AL, Appellees**

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D-130018-C**

**OPINION**

GoDaddy.com, LLC ("GoDaddy") filed a petition in this Court seeking an order permitting an interlocutory appeal of the trial court's order denying GoDaddy's motion to dismiss plaintiffs' claims on the basis that such claims are barred by section 230 of the Communications Decency Act (the "CDA"). *See* 47 U.S.C. § 230. We granted GoDaddy's request to file an interlocutory appeal. After consideration of the appeal, we reverse the trial court's order.

1

# I. BACKGROUND

Plaintiffs filed the underlying action on behalf of a putative class of women who allege that other defendants, not a party to this appeal, who owned two "revenge porn" websites, published sexually explicit photographs of plaintiffs without their permission or consent. GoDaddy, as an interactive computer service provider, hosted the revenge porn websites. In their brief to this Court, plaintiffs admit that GoDaddy did not create the defamatory and offensive material at issue. Plaintiffs argue that because GoDaddy knew of the content, failed to remove it, and then profited from the activity on the websites, GoDaddy is jointly responsible for plaintiffs' damages. In their petition, plaintiffs allege that these revenge websites "engage[d] in the publication of obscenity and child pornography" in violation of Texas Penal Code. Plaintiffs further allege that GoDaddy hosted the websites despite having knowledge that the developers were engaged in illegal activities. Plaintiffs assert causes of action against GoDaddy "for intentional infliction of emotional distress, for its severe, extreme, intentional, and unlawful misconduct in violation of the Texas Penal [Code], and for its gross negligence in violation of Texas Penal Code[.]" Plaintiffs further contend,

> [b]y its knowing participation in these unlawful activities, GoDaddy
> has also committed the intentional Texas tort of invasion of privacy
> upon these Plaintiffs, as well as . . . intrusion on Plaintiffs' right to
> seclusion, the public disclosure of their private facts, the wrongful
> appropriation of their names and likenesses, false light invasion of

2

Plaintiffs' privacy, and a civil conspiracy . . . to perpetrate these intentional state law torts.

GoDaddy filed a motion to dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure. In its memorandum of law filed in support of its motion to dismiss, GoDaddy argued that it is immune from civil liability for plaintiffs' claims under section 230 of the CDA because GoDaddy is a provider of interactive computer services and cannot be treated as a publisher of content created by a third party. Plaintiffs responded that the websites were "'revenge porn' websites" and by their nature not protected by the First Amendment; and, therefore, the website owners were not entitled to immunity under the CDA. Plaintiffs further argued that the CDA does not preempt their state law tort claims. After a hearing, the trial court denied GoDaddy's motion to dismiss.

GoDaddy filed a motion to certify the trial court's order denying the motion to dismiss for interlocutory review in accordance with Rule 168 of the Texas Rules of Civil Procedure and section 51.014(d) of the Texas Civil Practice and Remedies Code. The trial court certified the following issues for interlocutory appeal to this Court:

(1) [W]hether immunity under Section 230 of the Communications Decency Act (the "CDA") bars each of the claims asserted against [GoDaddy] as a matter of law based on Plaintiffs' admission that [GoDaddy] did not create, develop, or publish the content at issue; and

3

(2) [W]hether, as a matter of law, Plaintiffs have alleged facts that, if true, state a claim against [GoDaddy].

This appeal followed.

## II. STANDARD OF REVIEW

Rule 91a of the Texas Rules of Civil Procedure allows a party to move the court to dismiss a groundless cause of action. Tex. R. Civ. P. 91a. The rule provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

Tex. R. Civ. P. 91a.1. We review the trial court's ruling on a question of law de novo. *See El Paso Nat'l Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999). Before Rule 91a, Texas procedure did not have a counterpart to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Fort Bend Cnty. v. Wilson*, 825 S.W.2d 251, 253 (Tex. App.—Houston [14th Dist.] 1992, no writ). In 2011, this deficiency was remedied when the Legislature promulgated section 22.004(g) of the Texas Government Code, which provides that the "supreme court shall adopt rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence." *See* Tex. Gov't Code Ann. § 22.004(g) (West 2013). While not identical, Rule 91a is analogous to Rule 12(b)(6);

4

therefore, we find case law interpreting Rule 12(b)(6) instructive. *See* Tex. R. Civ. P. 91a; Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility requires facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Essentially, under the federal rules, the complaint is liberally construed in favor of the plaintiff and all well-pleaded facts are taken as true. *Ashcroft*, 556 U.S. at 678-79; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. Likewise, in determining whether the trial court erred in denying a defendant's motion to dismiss, we take all plaintiff's allegations as true and consider whether a plaintiff's petition contains "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. Rule 12(b)(6) dismissal is appropriate if the court determines beyond doubt that the plaintiff can prove no set of facts to support a claim that would entitle him to relief. *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir.2003). Just as a motion to dismiss

for failure to state a claim under Rule 12(b)(6) is a proper vehicle to assert a claim of immunity under the federal rules, a motion to dismiss under Rule 91a is a proper vehicle to assert an affirmative defense of immunity under section 230 in the state court. *See Imbler v. Pachtman*, 424 U.S. 409, 416 (1976) (prosecutorial immunity); *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 276, 279 (5th Cir. 2001) (prosecutorial immunity and witness immunity).

On appeal, GoDaddy argues that the trial court erred in denying its motion to dismiss under Rule 91a because it is immune from suit for plaintiffs' asserted causes of action. Plaintiffs contend that their claims against GoDaddy are not precluded by the CDA because their state law intentional tort causes of action stem from GoDaddy's knowledge of the illegal content of the websites and its refusal to shut the websites down. Plaintiffs further assert that GoDaddy is not entitled to immunity under section 230 of the CDA because the underlying content is unlawful or not entitled to First Amendment protection.

## III. ANALYSIS

To support its argument that it is entitled to immunity, GoDaddy relies on the following language in section 230:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

6

47 U.S.C. § 230(c)(1).[1] The statute defines an "'interactive computer service'" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet[.]" *Id.* § 230(f)(2). The statute defines an "'information content provider'" as "any person or entity that is responsible, in whole or in part, for the creation or development of

---

[1] Subsection (c) of section 230 of the CDA states in full:

(c) Protection for "good samaritan" blocking and screening of offensive material

(1) Treatment of publisher or speaker

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability

No provider or user of an interactive computer service shall be held liable on account of --

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).

information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3).

GoDaddy asserts that it is a provider of an interactive computer service as defined by the CDA, that the content at issue was provided by another information content provider, and plaintiffs' allegations improperly seek to treat GoDaddy as a publisher of the content posted on the websites by third parties. Plaintiffs argue that GoDaddy is not entitled to immunity because section 230 does not preempt state law intentional torts, and because the immunity provision in section 230 only applies if the website content qualifies for protection under the First Amendment. Plaintiffs argue that the CDA "does not protect conduct that is illegal or in violation of a federal or state penal statute." We address these arguments in turn.

A. Survival of State Law Intentional Tort Claims

Citing our opinion in *Milo v. Martin*, 311 S.W.3d 210 (Tex. App.—Beaumont 2010, no pet.), plaintiffs assert that we have previously held that the CDA does not preempt state law intentional torts. Plaintiffs' reliance on *Milo* is misplaced. In *Milo*, plaintiffs filed suit against individual defendants, who ran a website called "The Watchdog[,]" seeking damages resulting from the alleged publication of derogatory comments that were posted by anonymous users on the website's "'Guest Book.'" 311 S.W.3d at 211-12. The Watchdog filed a no evidence motion for summary judgment arguing that section 230 of the CDA

8

prevented plaintiffs from asserting claims against The Watchdog that treated it as a publisher of the comments made on the guest book. *Id*. at 212. On appeal of the trial court's grant of summary judgment in favor of The Watchdog, we explained that section 230 generally controls claims regarding an internet service provider's republication of a third party's statement. *Id*. at 214. We recognized that the federal statute "'overrides the traditional treatment of publishers, distributors, and speakers under statutory and common law.'" *Id*. at 214-15 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003)). We noted the broad application of section 230 in federal courts and stated that in enacting section 230 "Congress apparently made a choice 'not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries[.]'" *Id*. at 215 (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). We explained:

> Regardless of the grave potential that false and defamatory posts can have on the lives of its citizens, Congress apparently decided to prevent states from utilizing state libel law to impose liability on website providers when they republish false and defamatory content created and developed by third parties without the internet service provider's material involvement.

*Id*. at 218. We concluded The Watchdog could not be held liable for the posting of slanderous comments because there was no evidence that it was an information content provider or that it otherwise developed the offensive posts. *Id*. at 217.

9

In support of their claim for intentional infliction of emotional distress, the plaintiffs in *Milo* also alleged that The Watchdog's failure to respond to their request to remove the posts constituted extreme and outrageous conduct. *Id.* at 218. Significantly, we expressly refrained from answering the question of whether plaintiffs' state law claim for intentional infliction of emotional distress was outside the scope of section 230, stating that it was "a matter we need not decide" because there was no summary judgment evidence to support plaintiffs' allegation that The Watchdog's failure to remove the posts constituted extreme and outrageous conduct. *Id.* at 217-18. We noted our concern "that section 230 does not provide a right to request a website's owner to remove false and defamatory posts placed on a website by third parties, and does not provide the injured person with a remedy in the event the website's owner then fails to promptly remove defamatory posts[.]" *Id.* at 218. We did not hold, as plaintiffs contend, that plaintiffs' state law claims were outside the scope of section 230's immunity provision. *Id.*[2]

---

[2] In their appellate brief, plaintiffs cite to and rely on the concurring opinion in *Milo* to support their argument that this Court has previously ruled on this issue. However, a concurring opinion has no precedential value and does not bind this Court. *See Live Oak Cnty. v. Lower Nueces River Water Supply Dist.*, 446 S.W.2d 14, 20 (Tex. Civ. App.—Beaumont 1969, writ ref'd n.r.e.) ("We have not, in our recitation of the holdings of the several courts, included the remarks found in the concurring opinion on the Summary Judgment Appeal . . . . It has been said that a concurring opinion has no binding effect as precedent since it represents only the

Plaintiffs also cite to *Fair Hous. Counsel v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) and *Cisneros v. Sanchez*, 403 F. Supp. 2d 588 (S.D. Tex. 2005) in support of their argument that their intentional tort claims fall outside the purview of section 230. Neither case supports plaintiffs' contention. In *Roommates* the court found the website operator was not entitled to immunity for the website's discriminatory questions, answer choices, and registration process that the website operator designed and developed. 521 F.3d at 1164-1170, 1172. As to this portion of the website content, the court concluded the website operator was an "information content provider" as defined by section 230. *Id*. at 1164. With regard to the "Additional Comments" section on the website, the court found the website operator was entitled to immunity because that portion of the website merely published comments made by third parties. *Id*. at 1173-74. In this case, it is undisputed that GoDaddy acted only as a hosting company and did not create or develop the third party content on the websites. *Roommates* is inapposite to the present case.

Likewise, in *Cisneros*, the plaintiff sued the defendant "'for his role in being a source of the defamatory material'" on the website, alleging that he authored some of the defamatory material, and that he "used his control of the website to add and remove certain comments by others, effectively shaping the messages

personal views of the concurring judge and does not constitute the law of the case.")

11

conveyed on the website." *Cisneros*, 403 F. Supp. 2d at 590. The defendant removed the case to federal court on the basis of complete preemption. *Id*. at 589-90. In determining whether plaintiff's claims were completely preempted by the CDA, the court first considered whether plaintiff's libel claim was precluded by the CDA. *Id*. at 590. The court concluded that a valid libel claim had been alleged against the defendant because section 230 "only prevents a provider from being treated as the author of 'information provided by another[,]'" and the defendant had been sued as the author of the defamatory statements. *Id*.

The court then turned to the question of whether plaintiff's libel claim was completely preempted by the CDA, such that removal to federal court was proper. *Id*. at 590-91. The court concluded that "the CDA is clearly not intended to completely preempt state law in any given area because [section] 230(e)(3) is narrowly tailored to allow state and local laws within the same field, so long as they are consistent" with section 230. *Id*. at 592. The court held "a state law libel claim seeking to hold the author of a defamatory statement liable for statements he allegedly made is not preempted by the CDA[,]" and remanded the plaintiff's libel claim back to the state court. *Cisneros*, 403 F. Supp. 2d at 593. The court ignored plaintiff's claim for intentional infliction of emotional distress "because such a claim cannot be brought independently in Texas and is wholly dependent on the success of [p]laintiff's libel claim." *Id*. at 590 (citing *Boyles v. Kerr*, 855 S.W.2d

12

593, 594 (Tex. 1993)); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (noting that when plaintiff's complaints fall within the purview of other legal remedies, plaintiff cannot assert an intentional infliction of emotional distress claim merely because those other avenues of relief are barred). It is undisputed in this case that plaintiffs are not suing GoDaddy as the author or creator of the website content. *Cisneros* lends no support to plaintiffs' argument that GoDaddy is not entitled to immunity from plaintiffs' claims.

Plaintiffs argue that their intentional infliction of emotional distress claim is not a "'gap filler tort'" and can be brought independently when the victim has no other recognized theory of redress. We note that here, the recognized theory of redress appears to be a defamation claim. *See Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013) ("[I]t is a well-settled legal principle that one is liable for republishing the defamatory statement of another."); *Milo*, 311 S.W.3d at 214 ("Under Texas law, a person who repeats a defamatory statement made initially by another can be held responsible for republishing the libelous statement."); *see also* RESTATEMENT (SECOND) OF TORTS §§ 576 (Harm Caused by Repetition), 577 (What Constitutes Publication), 578 (Liability of Republisher), 581 (Transmission of Defamation Published by Third Person) (1977). However, under the facts of this case, we need not decide whether plaintiffs' may bring their intentional infliction of emotional distress claim independently of other recognized theories. All of plaintiffs' claims

13

against GoDaddy stem from GoDaddy's publication of the contested content, its failure to remove the content, or its alleged violation of the Texas Penal Code for the same conduct. Allowing plaintiffs' to assert any cause of action against GoDaddy for publishing content created by a third party, or for refusing to remove content created by a third party would be squarely inconsistent with section 230.[3] *See* 47 U.S.C. § 230(e)(3) ("[N]o liability may be imposed under any State or local law that is inconsistent with this section."); *see also Zeran*, 129 F.3d at 332-33 (concluding that the distributor theory of liability was "merely a subset" of publisher liability, the court held that AOL was immune from suit for claims that it was liable as a distributer when AOL was given notice of defamatory content posted by a third party and unreasonably delayed removing it from the website).

The Ninth Circuit elaborated on this principle in *Barnes v. Yahoo!, Inc.*, in determining that Yahoo was immune from suit for plaintiff's negligent undertaking claim:

> [A] plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence. Nor can he or she escape section 230(c) by labeling as a "negligent undertaking" an action that is quintessentially that of a publisher. . . . And what is the undertaking that Barnes alleges Yahoo

---

[3] Moreover, allowing plaintiffs to bring a private cause of action against GoDaddy for its alleged violations of the Texas Penal Code would be contrary to legislative intent. *See* 47 U.S.C. § 230(a); *Reeder v. Daniel*, 61 S.W.3d 359, 362-64 (Tex. 2001); *see also Brown v. De La Cruz*, 156 S.W.3d 560, 567 n.39 (Tex. 2004); *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

> failed to perform with due care? The removal of the indecent profiles that her former boyfriend posted on Yahoo's website. But removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove.

570 F.3d 1096, 1102-03 (9th Cir. 2009). The court in *Barnes* concluded that failing to remove or de-publish the offensive content constituted "*publishing conduct*" from which Yahoo was immune from suit under the CDA. *Id.* at 1103 (quoting *Roommates*, 521 F.3d at 1170-71); *see Zeran*, 129 F.3d at 332 (explaining that communication of a defamatory statement and the failure to remove a defamatory statement are publications, and "[i]n fact, every repetition of a defamatory statement" constitutes publication).

Because GoDaddy acted only as an interactive computer service provider and was not an information content provider with regard to the material published on the websites, plaintiffs cannot maintain claims against GoDaddy that treat it as a publisher of that material. Moreover, plaintiffs cannot circumvent the statute by couching their claims as state law intentional torts.

### B. Obscene or Illegal Nature of the Material

Plaintiffs spend a considerable portion of their brief arguing that GoDaddy cannot receive immunity under section 230 for publishing content that is unlawful or unprotected by the First Amendment. Plaintiffs contend the website's content does not qualify for First Amendment protection as legal pornography, and the

15

CDA "was never intended to bless criminal activities occurring on websites." Plaintiffs fail to cite to any authority that supports their position that only constitutionally protected content gives rise to immunity under section 230.

There is no provision in the CDA that limits its application to suits involving constitutionally protected material. *See* 47 U.S.C. § 230. Reading such an exception into the statute would undermine its purpose.

> The amount of information communicated via interactive computer services is . . . staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Zeran*, 129 F.3d at 331. In section 230, Congress set forth the specific policies behind the enactment of the CDA:

It is the policy of the United States --

(1) to promote the continued development of the Internet and other interactive computer services and other interactive media;

(2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation;

(3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services;

16

(4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and

(5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer.

47 U.S.C. § 230(b). A construction of the CDA that yields a broad application of its provisions, without regard to the nature of the content at issue, is supported by its stated policies. *See id.*

The plain language of the CDA also supports such an interpretation. *See* 47 U.S.C. § 230. The CDA provides that nothing in section 230 "shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of Title 18, or any other Federal criminal statute." *Id.* § 230(e)(1). Likewise, the CDA provides that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section." *Id.* § 230(e)(3). Therefore, the plain language of the statute contemplates application of immunity from civil suit under section 230 for interactive computer service providers even when the posted content is illegal, obscene, or otherwise may form the basis of a criminal prosecution. *See id.* § 230(e)(1), (3); *see also Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758, at **1, 3-5, 21-22 (E.D. Tex. 2006) (dismissing claims

17

against Yahoo for knowingly allowing the posting of child pornography in a registered e-group); *see also Doe v. GTE Corp.*, 347 F.3d 655, 657-661 (7th Cir. 2003) (holding plaintiffs' claims against GTE for providing web hosting services to sites such as "youngstuds.com," at which unauthorized, hidden-camera video footage taken of athletes were offered for sale, were barred under section 230); *see generally Barnes*, 570 F.3d at 1098-99, 1105-1106 (holding plaintiff's negligent undertaking claim against Yahoo for failing to remove indecent profiles, posted by plaintiff's former boyfriend on a website, was barred under section 230); *cf. Prickett v. InfoUSA, Inc.*, 561 F. Supp. 2d 646, 647-48, 652 (E.D. Tex. 2006) (holding plaintiffs' state law claims against *info*USA, which stemmed from unauthorized postings of plaintiffs' names, address and telephone number on adult entertainment websites, were barred under section 230).

In *Bates*, plaintiffs filed suit against Bates and Yahoo for violations of 18 U.S.C. § 2252A (a civil remedy available for violation of federal child pornography laws), negligence, negligence per se, intentional infliction of emotional distress, invasion of privacy, and civil conspiracy. *Bates*, 2006 WL 3813758, at *5. The plaintiffs alleged Yahoo had knowledge of an e-group called "Candyman" that provided a forum for sharing, posting, emailing, and transmitting hard-core, illegal child pornography. They asserted they could maintain a claim against Yahoo under 18 U.S.C. § 2252A, for violation of federal criminal statutes.

18

*Id*. at **6, 20-22.   The plaintiffs argued that the civil remedy available under section 2252A was exempt from the immunity provision in section 230.  *Id*. at *3.

In rejecting the plaintiffs' argument, the court found that "immunity from all private civil liability comports with the clear Congressional policies to avoid disincentives to innovation and to encourage self-regulation.  Congress made these policies explicit in the language of the statute[.]"  *Id*.  The court elaborated:

> Section 230 does not, as [p]laintiffs propose, provide that an intentional violation of criminal law should be an exception to the immunity from civil liability given to internet service providers.  Such a finding would effectively abrogate the immunity where a plaintiff simply alleged intentional conduct.  Instead, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content-are barred."

*Id*. at *4.   The court concluded that "'Congress decided not to allow private litigants to bring civil claims based on their own beliefs that a service provider's actions violated the criminal laws.'"  *Id*. at *5 (quoting Magistrate's Report and Recommendation).  The court granted Yahoo's motion to dismiss plaintiffs' claims and dismissed the case with prejudice.  *Id*.

Plaintiffs' contention that GoDaddy is not entitled to immunity from plaintiffs' state law claims because of the alleged obscene or unlawful nature of the material posted on the websites is without merit.  *See Bates*, 2006 WL 3813758, at **1, 3-5, 22; *see generally Barnes*, 570 F.3d at 1098-99, 1106; *see also GTE*, 347 F.3d at 657-62.

19

## C. Plaintiffs' Request to Replead

Plaintiffs argue for the first time on appeal that GoDaddy violated its internal policies, as set forth in its "Universal Terms of Service Agreement," which according to plaintiffs, prohibit the use of websites for any purpose that is illegal or promotes or encourages illegal activity. Plaintiffs argue GoDaddy's violation of its service agreement "further [corroborates] the plausibility of [plaintiffs'] claims against GoDaddy." The service agreement plaintiffs rely on is not in the record before us, and this argument is not properly before this Court. *See* Tex. R. App. P. 33.1. Based on the provisions of the alleged service agreement, plaintiffs request that we permit them to replead their case after considering the merits of GoDaddy's appeal. We decline to do so.

We recognize federal courts often give plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case under Rule 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). However, the courts do not grant leave to amend a complaint when the claims being repled are unable to overcome the deficiencies that led to their dismissal. *See Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 478 (5th Cir. 2013) ("Clearly, if a complaint as amended is subject to dismissal, leave to amend need not be given.") (internal quotation marks omitted). Because we have held that GoDaddy is entitled to immunity from suit for its alleged conduct as an interactive

20

computer service provider, plaintiffs' request to replead their claims against GoDaddy, as indicated in their brief, would be futile. *See id.*

Were plaintiffs allowed to amend their petition to assert a further cause of action against GoDaddy for allegedly violating the terms of its service agreement, such claims would likewise be precluded by section 230. Plaintiffs contend that GoDaddy's knowledge of the illegal or defamatory nature of the content of the websites and its subsequent failure or refusal to remove the offensive material or otherwise shut the accounts down violated the terms of its service agreement. However, as previously discussed the courts treat a party who intentionally and unreasonably fails to remove defamatory matter that it knows to be exhibited on its website as a publisher under the CDA, thus subject to the immunity provision.

Moreover, in this case, plaintiffs have already amended their petition three times. Plaintiffs filed their second amended petition after GoDaddy filed its motion to dismiss, but prior to the trial court's hearing on the motion. Plaintiffs filed their third amended petition after the trial court's hearing and initial order denying GoDaddy's motion to dismiss, but prior to the trial court's amended order certifying the issues for interlocutory appeal. Plaintiffs relied on their third amended petition in making their arguments to this Court. Therefore, plaintiffs have been allowed an opportunity to reshape their claims in an effort to avoid GoDaddy's assertion of immunity under section 230. Allowing plaintiffs to once

again replead their case, at this late stage, would be an inefficient use of the parties' and the court's resources, would unduly prejudice GoDaddy, and would be contrary to the policies set forth in the CDA. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Under these circumstances, we deny plaintiffs' request to replead their case. *See Simmons*, 732 F.3d at 478.

## IV.   CONCLUSION

Plaintiffs seek to hold GoDaddy liable as the publisher of the contested website content; therefore, plaintiffs' claims are barred under 47 U.S.C. § 230. Even taking plaintiffs' allegations as true, plaintiffs' have failed to state a viable claim against GoDaddy. We sustain both of GoDaddy's appellate issues and reverse the order of the trial court denying GoDaddy's motion to dismiss. We remand the cause to the trial court for entry of judgment in favor of GoDaddy.com, LLC and for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on November 5, 2013
Opinion Delivered April 10, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.

22