

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-21-00387-CV

Donald W. **TAYLOR**,
Appellant

v.

Clark **ASPY**, Madison Preston, and Naman Howell Smith & Lee, PLLC,
Appellees

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 16670
Honorable N. Keith Williams, Judge Presiding

Opinion by:      Liza A. Rodriguez, Justice

Sitting:         Irene Rios, Justice
                 Liza A. Rodriguez, Justice
                 Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: August 16, 2023

AFFIRMED

Donald W. Taylor appeals from the trial court's order dismissing his claims pursuant to

Texas Rule of Civil Procedure 91a. We affirm.

### BACKGROUND

In January 2016, Taylor began working for AutoZone, Inc. as a salesman. On September

25, 2017, he filed an arbitration proceeding, alleging that he had been injured at work as a result

of AutoZone, Inc.'s negligence. In the arbitration proceeding, AutoZone, Inc. was represented by

---

[1]Sitting by assignment pursuant to section 74.003(b) of the Texas Government Code

Appellees Clark Aspy and Madison Preston of the law firm Naman Howell Smith & Lee, PLLC ("the Aspy Defendants"). On July 3, 2019, the arbitrator ruled against Taylor and denied his claims. Taylor did not appeal or seek other review of the arbitrator's decision.

Two years later, on June 11, 2021, Taylor, representing himself, sued the Aspy Defendants for "negligence, fraud, malpractice, professional misconduct, negligent misrepresentation, and deceptive trade practices." The Aspy Defendants were served with the lawsuit on July 26, 2021. In response to the lawsuit, on August 3, 2021, the Aspy Defendants filed a timely motion to dismiss pursuant to Texas Rule of Civil Procedure 91a. On August 19, 2021, Taylor filed a response to the Rule 91a motion to dismiss and filed a "Supplemental Amended Plaintiff's Petition." In his "supplemental amended" petition, Taylor alleged that he was injured twice while working at AutoZone, Inc. The complaints in his petition centered around actions taken by the Aspy Defendants during the legal proceedings related to his claim against AutoZone, Inc., including the following examples:

- Taylor alleged that "every time [he] asked or pleaded Arbitrator for Abeyance were denied, [and] Defendant[s] at one time stated over a phone conference 'both parties must agree.'" He alleged that the Aspy Defendants "and AAA manager" told him, "When it comes to your request for Abeyance, this is an issue that requires the <u>agreement of both parties</u>." He alleged that this "statement was so dist[urbing] [that] Plaintiff's emotions became angry to find the trustworthiness of the aforementioned remarks . . . were false."

- He alleged that during the arbitration hearing, "[n]o one listened to facts, Defendant Aspy continued to interrupt [his] statements, or made statements of disagreeing and disrupting [his] statements during hearing were intentional behavior of concealment by Defendant[] was an unethical behavior."

- He alleged that he filed an OSHA complaint and that "Defendant[s] and Arbitrator knew of OSHA appeal [which] was another reason for [Taylor]'s last attempting effort for 'Emergency Abeyance' which was denied again; otherwise outcome would have been different." "Arbitrator and Defendants knew of pending decision that would result in Negligence Per Se case, violating [his] constitutional and civil liberties or rights throughout discovery [and] hearing."

- He alleged facts regarding why he had fired three different law firms during the arbitration proceeding and then complained "Defendants continued to argue the above mentioned items accusing Plaintiff of intentional delay, and Arbitrator never listened to Plaintiff's statements regarding above statements."

- He complained of emails sent by the Aspy Defendants during the arbitration proceeding.

- He alleged he found documents on the internet relating to how his eye injury should have been treated by AutoZone, Inc. when he was first injured and then complained that during the arbitration proceeding, "Defendants vigorously denied [his] documents . . . [and] continued to argue that Plaintiff could have [gone] outside to use water hose to wash face and eyes off[.] Plaintiff stated it was near freezing outside and could not see well."

- He alleged that "Arbitrator twisted or Defendants submitted fabricated documentation to Arbitrator distorting [his] statements from documents made in arbitration hearing recordings and can be confirmed by stenographer recordings." Taylor alleged that during the arbitration hearing, "Defendant Aspy would disagree, disrupt [his] thought, and at times [the court reporter] had difficulty in keeping up with documents and the[ir] names because of Defendant[s] over talking Plaintiff [and] being negligent in professional activity, causing Plaintiff undue mental anguish."

- He alleged that the Aspy Defendants "denied" his ability to present evidence at the hearing and "did not allow" certain evidence to be considered by the arbitrator.

- He alleged that the Aspy Defendants made false representations to the arbitrator and that their "statements, documents and conduct were intended to deceive Arbitrator; and Defendants reliance on false information intentionally presented changed outcome of hearing violating Plaintiff's civil liberties in not allowing a fair trial."

- He alleged that the Aspy Defendants "knew that Plaintiff was working in a handicap position due to eyes being damaged, as Plaintiff announced throughout arbitration proceedings, not allowing all the factual evidence to [be] obtained and presented; causing Plaintiff emotional distress."

Taylor alleged that the Aspy Defendants "engaged in certain false, misleading, fraudulent, malicious and deceptive acts, practices and/or omissions actionable under Consumer Protection Act, Civil Liberties, Texas Tort Claims Act of Intentional Infliction of Emotional Distress in not allowing Plaintiff a fair trial under the Bill of Rights Article 6. as alleged herein and acting outside

Defendants' representing rights causing undue harm to Plaintiff." Taylor also alleged that the Aspy

Defendants "engaged in an 'unconscionable action or course of action' to the detriment of Plaintiff

by Defendants' [committing] 'Fraud Upon the Court'; and avoiding or not allowing discovery

regarding the Gravamen of the Complaint." Taylor further alleged,

> Furthermore, Defendants abused and used their professional knowledge [sic] the course of action taken violated Plaintiff's civil liberties by taking advantage of Plaintiff's lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree presenting fraudulent documents to Arbitrator, tampering in generating Plaintiff's time sheet from Excel Application presenting said evidence to Arbitrator and/or tampering with audiotapes, denying Abeyance, shifting or moving Plaintiff from Employer Arbitration to Commercial or Consumer Arbitration back and forth, and making and/or presenting false statements or documentation during Arbitration process and hearing [sic] committing perjury.

Taylor further alleged the Aspy Defendants committed fraud by making "material false

representations" to the arbitrator and were negligent in supplying "false information" to the

arbitrator. Finally, Taylor alleged that the Aspy Defendants were liable for "misconduct" by

committing the following:

> a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; and Defendant engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; and engaged in conduct that was prejudicial to the administration of justice causing mental distress to Plaintiff.

Seven days after Taylor filed his "supplemental amended" petition, the Aspy Defendants

filed their Supplemental Rule 91a Motion to Dismiss. After a hearing, the trial court granted the

Aspy Defendants' Rule 91a motion to dismiss and dismissed Taylor's claims with prejudice.

Taylor then filed a timely notice of appeal. The Aspy Defendants filed a timely motion for new

trial, requesting that the trial court reconsider its decision not to award them attorney's fees

incurred in defending the lawsuit. In response, Taylor filed a motion to dismiss the Aspy

Defendants' motion for new trial. Taylor also moved for sanctions against the Aspy Defendants.

Within its plenary power, the trial court granted the Aspy Defendants' motion for new trial and

reconsideration of attorney's fees. On October 27, 2021, the trial court signed an order denying Taylor's motion to dismiss and for sanctions, "confirm[ing] its previous ruling on the Rule 91a Motion filed by Defendants" by granting the Rule 91a motion to dismiss, and dismissing Taylor's claims with prejudice. The trial court further awarded the Aspy Defendants attorney's fees in the amount of $2,500 and ordered contingent appellate attorney's fees if Taylor appealed.

## TAYLOR'S APPELLATE ISSUES

Taylor brings a multitude of "issues" in his brief. In liberally reviewing his brief, we construe his "issues" as follows: (1) the trial court erred in dismissing his claims under Rule 91a on the basis of the attorney-immunity doctrine; (2) the trial court erred in awarding attorney's fees to the Aspy Defendants because the Aspy Defendants produced no evidence to support any fees; and (3) the trial court erred in denying his motion for sanctions. To the extent Taylor intended to bring additional issues, we hold they are inadequately briefed and waived. *See* TEX. R. APP. P. 38.1(i).

## RULE 91A

Under Texas Rule of Civil Procedure 91a, a party may move for dismissal on the ground that a cause of action has no basis in law or fact. *See* TEX. R. CIV. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id*. "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id*. "In ruling on a Rule 91a motion to dismiss, a court may not consider evidence but 'must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits.'" *In re Farmers Tex. Cty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) (quoting TEX. R. CIV. P. 91a.6). "We review the merits of a Rule 91a ruling de novo [because] whether a defendant is entitled to dismissal under the facts alleged is a legal question." *Id*.

In determining whether a cause of action should be dismissed pursuant to Rule 91a, a court considers "the allegations of the live petition and any attachments thereto." *Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 183 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). "We apply the fair notice pleading standard . . . to determine whether the allegations of the petition are sufficient to allege a cause of action." *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). We thus "construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact." *Koenig v. Blaylock*, 497 S.W.3d 595, 599 (Tex. App.—Austin 2016, pet. denied). "We remain cognizant that '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Vasquez v. Legend Nat. Gas III, LP*, 492 S.W.3d 448, 451 (Tex. App.—San Antonio 2016, pet. denied) (quoting *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. denied)).

A motion to dismiss under Rule 91a must identify each cause of action it attacks and specify "the reasons the cause of action has no basis in law, no basis in fact, or both." TEX. R. CIV. P. 91a.2. When a defendant moves to dismiss a cause of action on the grounds that it has no basis in law or fact, a plaintiff may amend the pleadings at least three days before the date of the hearing. *See id*. R. 91a.5(b). "If the respondent amends the challenged cause of action at least 3 days before the date of the hearing, the movant may, before the date of the hearing, file a withdrawal of the motion or an amended motion directed to the amended cause of action." *Id*. "[T]he court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any [permissible] pleading exhibits . . . ." *Id*. R. 91a.6.

In their original Rule 91a motion to dismiss, the Aspy Defendants argued that all of Taylor's claims were barred by the doctrine of attorney immunity, noting that Taylor had

"judicially admit[ed] he is a third party to Defendants' attorney-client relationship with AutoZone, Inc." They explained that his petition alleged "only that Defendants took somehow improper actions in how they defended AutoZone, Inc. in the underlying litigation." They argued that "[h]ow and in what manner [they] defended their client in the underlying matter are actions [that] are clearly of the 'kind' that attorneys perform for their clients and thus fall squarely within immunity principles." They emphasized that Taylor's petition "simply fail[ed] to allege any acts on the part of Defendants occurring outside of their representation of AutoZone, Inc." Taylor's response to the Rule 91a motion argued that the Aspy Defendants' "acts were fraudulent, malicious or both in Defendants' conduct of said actions were foreign and not protected by Defendants' duties in the course of representing their client."

Taylor also filed a "supplemental amended" petition. However, there was no substantive difference between the petition on file at the time the Aspy Defendants filed their Rule 91a motion to dismiss and this "supplemental amended" petition. The Aspy Defendants then filed a supplemental Rule 91a motion to dismiss, pointing out that Taylor's "supplemental amended" petition added no causes of action and merely reorganized some of the wording. The Aspy Defendants again argued all of Taylor's claims were barred by the doctrine of attorney immunity.

"Attorney immunity is an affirmative defense." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020). In *Bethel*, the supreme court held that "Rule 91a permits dismissal based on an affirmative defense." *Id*. at 653. Although Rule 91a.6 does not allow a court to consider evidence in ruling on the motion and requires the court to decide the motion based solely on the pleading of the cause of action, the supreme court "conclude[d] that Rule 91a permits motions to dismiss based on affirmative defenses 'if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.'" *Id*. at 656 (quoting TEX. R. CIV. P. 91a.1).

In *Bethel*, the defendant filed a Rule 91a motion to dismiss based on the doctrine of attorney immunity. The supreme court explained that "the allegations in [the plaintiff]'s petition show that [the plaintiff] is not entitled to relief." *Id*. The court explained that the facts as pleaded in the plaintiff's petition "entitled [the defendant] to attorney immunity and thus dismissal under Rule 91a." *Id*. "The trial court did not need to look outside [the plaintiff]'s pleadings to determine whether attorney immunity applied to the alleged facts." *Id*. "Taking [the plaintiff]'s allegations as true, the trial court determined that [the plaintiff] was not entitled to the relief sought because attorney immunity barred [the plaintiff]'s claims." *Id*. "That is enough for dismissal under Rule 91a." *Id*.

Under the attorney-immunity doctrine, attorneys are, as a general rule, "immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." *Id*. at 657 (citation omitted). "The immunity inquiry 'focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct.'" *Id*. (quoting *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018)) (emphasis in original). While "attorney immunity is not boundless," the supreme court has "declined to recognize fraud as an exception to the attorney-immunity doctrine." *Id*. The court emphasized that an "attorney is given latitude to pursue legal rights that he deems necessary and proper precisely to avoid the inevitable conflict that would arise if he were forced constantly to balance his own potential exposure against his client's best interest." *Id*. (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 483 (Tex. 2015)). According to the court, recognizing "a general fraud exception to attorney immunity would 'significantly undercut' this purpose." *Id*. (quoting *Cantey Hanger*, 467 S.W.3d at 483). Thus, the court concluded that "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Id*. (quoting *Cantey Hanger*, 467 S.W.3d at 483). The court emphasized that a court's "focus [should] remain[] on whether the

attorney's complained-of conduct fell within 'the scope of an attorney's legal representation of his client.'" *Id*. (quoting *Cantey Hanger*, 467 S.W.3d at 484).

For the policy reasons listed above, the supreme court in *Bethel* declined to recognize a categorical exception of the attorney-immunity doctrine for criminal conduct alleged by third parties. *Id*. The court noted that an "attorney is not immune from suit for participating in criminal or 'independently fraudulent activities' *that fall outside the scope of the attorney's representation of a client*." *Id*. (quoting *Cantey Hanger*, 467 S.W.3d at 483) (emphasis added). Nor does immunity apply "when an attorney's actions do not involve 'the provision of legal services'—for example, when an attorney assaults opposing counsel." *Id*. at 658 (quoting *Cantey Hanger*, 467 S.W.3d at 482). The court further explained that "nothing in our attorney-immunity jurisprudence affects an attorney's potential criminal liability if the conduct constitutes a criminal offense." *Id*. "And other remedies—such as sanctions, spoliation instructions, contempt, and disciplinary proceedings—may be available even if immunity shields an attorney's wrongful conduct." *Id*. According to the court, in considering whether the attorney-immunity doctrine applies, a court should "look[] to the type of conduct, not whether that conduct was wrongful." *Id*. If the conduct falls within the "scope of client representation" and is not "foreign to the duties of an attorney," the attorney-immunity doctrine applies. *Id*.

The *Bethel* court then considered the plaintiff's factual allegations in her petition, took the allegations "as true," and concluded the "complained-of actions [were] the kind of actions that [were] 'taken in connection with representing a client in litigation.'" *Id*. (quoting *Cantey Hanger*, 467 S.W.3d at 481). In the underlying suit, the plaintiff had filed a wrongful death action, alleging her husband died in an automobile accident while towing a trailer due to the trailer's faulty brakes. *Id*. at 653. She later sued the attorney who had represented the trailer's manufacturer, claiming the attorney had "intentionally destroyed key evidence in the case by disassembling and testing the

trailer's brakes before [she] had the opportunity to either examine them or document their original condition." *Id*. In reviewing the allegations in the plaintiff's petition, the court concluded that "at bottom, [the plaintiff] takes issue with the manner in which [the defendant] examined and tested evidence during discovery in civil litigation while representing [the plaintiff]'s opposing party." *Id*. at 658. The court emphasized that the plaintiff's allegations "are paradigmatic functions of an attorney representing a client in litigation." *Id*. The court held that based on the facts alleged in the plaintiff's petition, "attorney immunity shield[ed] [the defendant attorney] from civil suit by a third party, whom [the defendant attorney] did not represent, for conduct connected to [the defendant attorney]'s representation of [his] client in litigation." *Id*. Thus, the court held the trial court had correctly granted the defendant attorney's Rule 91a motion to dismiss. *See id*.

Here, taking Taylor's allegations in his live pleading as true, the conduct of which Taylor complains falls within the scope of the Aspy Defendants' representation of AutoZone, Inc. in the arbitration proceedings. *See id*. For example, the Aspy Defendants objecting to Taylor's motion for abeyance in the arbitration proceeding fell within the scope of their representation of AutoZone, Inc. The Aspy Defendants emailing Taylor in discovery fell within the scope of their representation of AutoZone, Inc. The Aspy Defendants making representations to the arbitrator fell within the scope of the representation of AutoZone, Inc. In looking at "the type of conduct" and "not whether that conduct was wrongful," we hold the trial court correctly determined that the attorney-immunity doctrine barred Taylor's claims against the Aspy Defendants. *See id*. Thus, we find no error by the trial court in granting the Aspy Defendants' Rule 91a motion to dismiss.

### ATTORNEY'S FEES

Taylor argues the trial court awarded attorney's fees to the Aspy Defendants "without evidence of expenses or costs." As noted, the Aspy Defendants filed a motion for new trial, asking that the trial court reconsider their request for attorney's fees. At the hearing on their motion,

affidavits by Clark Aspy and James Parker, Jr. were admitted in evidence. The trial court granted the Aspy Defendants' motion to reconsider and awarded them $2,500.00 in attorney's fees incurred in the trial court, and contingent attorney's fees of $7,500.00 through the court of appeals, $4,000.00 if either party files a petition for review in the supreme court, $6,000.00 if the supreme court orders briefing on the merits, and another $4,000.00 if the supreme court orders oral argument.

Rule 91a.7 permits the trial court to award attorney's fees to the prevailing party. *See* TEX. R. CIV. P. 91a.7.[2] "When the moving party requests attorney's fees under Rule 91a.7 and presents supporting evidence, the trial court may award 'all costs and reasonable and necessary attorney's fees incurred with respect to the challenged cause of action.'" *Strickland v. iHeartMedia, Inc.*, 665 S.W.3d 739, 742 (Tex. App.—San Antonio 2023, pet. denied) (quoting TEX. R. CIV. P. 91a.7). "[A] claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *17 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (quoting *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501-02 (Tex. 2019)). At a minimum, such proof must include evidence of the services performed; who performed the services; when the services were performed; the reasonable amount of time required to perform the services; and the reasonable hourly rate for performing the services. *Id*. (citing *Rohrmoos Venture*, 578 S.W.3d at 501-02).

---

[2]Before 2019, Rule 91a required the trial court to award attorney's fees and costs to the prevailing party. *See* Former TEX. R. CIV. P. 91a.7 ("Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court *must* award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court.") (emphasis added). In 2019, Rule 91a was amended so that an award of attorney's fees and costs is within the trial court's discretion. *See* TEX. R. CIV. P. 91a.7 (providing that the trial "court *may* award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court") (effective Sept. 1, 2019) (emphasis added).

Here, the evidence submitted by the Aspy Defendants met these parameters. Clark's affidavit walked through the services performed by the law firm in defending the suit, the amount of time required to perform the services, and reasonable rate of $280 per hour for the lawyers performing the services. According to Clark's affidavit, $7,000.00 in total attorney's fees was reasonable and necessary in defending the suit in the trial court. The trial court awarded only $2500.00 in attorney's fees at the trial court level. We hold the evidence is sufficient to support the award of attorney's fees as ordered by the trial court.

With regard to a trial court's conditional award of appellate attorney's fees, the supreme court has explained that such fees "have not yet been incurred and thus must be projected based on expert opinion testimony." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020). "There is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Id*. "Of course this uncertainty does not excuse a party seeking to recover contingent appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id*. Having reviewed the record and James Parker, Jr.'s affidavit, we conclude the Aspy Defendants' uncontroverted evidence met that standard. Parker's affidavit states that he has reviewed the file in this case and gives a detailed explanation of the amount and type of appellate work that is reasonable and necessary to defend any appeal at all stages of the appellate process. His affidavit states in detail the number of hours in his opinion would be reasonable and necessary, along with what he considers a reasonable rate for the work. We hold the evidence is sufficient proof to support the contingent appellate fees awarded by the trial court. *See id*. Given there is sufficient evidence to support the trial court's award of attorney's

fees and Rule 91a permits the trial court to award attorney's fees, we find no error by the trial court.

**MOTION FOR SANCTIONS**

In his brief, Taylor states that he "again requests sanctions against [the Aspy Defendants] for submission of defective depositions to the court (arbitration) . . . ." We note that at the motion for new trial hearing, Taylor argued his motion for sanctions to the trial court, complaining about false documents submitted by the Aspy Defendants during the arbitration proceeding. The trial court replied, "[Y]ou're going back to the arbitration, and I'm not going to hear that argument." The trial court reminded Taylor that it had already determined the Aspy Defendants had no duty to him based on the attorney-immunity doctrine and denied the motion for sanctions. As we have held that the trial court correctly granted the Aspy Defendants' Rule 91a motion to dismiss based on the attorney-immunity doctrine, we find no abuse of discretion by the trial court in denying Taylor's motion for sanctions. *See Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004) (trial court's ruling on a motion for sanctions is reviewed for abuse of discretion).

**CONCLUSION**

For the reasons stated above, we affirm the trial court's judgment.

Liza A. Rodriguez, Justice