ACCEPTED
03-16-00270-CV
13113870
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/6/2016 8:44:30 PM
JEFFREY D. KYLE
CLERK

**NO. 03-16-00270-CV**

_____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/6/2016 8:44:30 PM
JEFFREY D. KYLE
Clerk

_____

AC INTERESTS, L.P. FORMERLY AMERICAN COATINGS, L.P.

*Appellant,*

v.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,

*Appellee.*

_____

**APPELLANT'S REPLY TO APPELLEE'S BRIEF**

**APPEAL OF CAUSE NO. D-1-GN-15-000779 FROM THE 98th JUDICIAL DISTRICT**

_____

The Law Office of C. William Smalling, PC
1700 Post Oak Blvd., 2 BLVD Pl, Ste 600
Houston, TX 77056
Tel: (713) 513 7153
Fax: (866) 738 0042
By: /s/ *Bill Smalling*
October 6, 2016
State Bar No. 24075086
bsmalling@billsmallinglaw.com
ATTORNEYS FOR APPELLANT

**PURSUANT TO TEXAS RULE OF APPELLANT PROCEDURE 39.7, APPELLANT REQUESTS ORAL ARGUMENT**

1

## IDENTITY OF PARTIES AND COUNSEL

1. APPELLANT, AC INTERESTS, L.P. FORMERLY AMERICAN COATINGS, L.P. Trial and Appellate Attorneys are The Law Office of C. William Smalling, PC; Bill Smalling; 1700 Post Oak Blvd., 2 BLVD Pl, Ste 600; Houston, TX 77056; Tel: (713) 513 7153; Fax: (866) 738 0042; E-mail: bsmalling@billsmallinglaw.com.

2. APPELLEE, TEXAS COMMISSION ON ENVIRONMENTAL QUALITY Trial and Appellate Attorneys are Texas Attorney General, Environmental Protection Div. (MC-066); Cynthia Woelk, Assistant Attorney General; P.O. Box 12548; Austin, Texas 78711-2548; Vox: (512) 463-2012, Fax: (512) 320-0911. Delivery Address: Office of the Attorney General, 300 W. 15th Street, Austin, TX 78701.

**The Law Office of C. William Smalling, PC**
**1700 Post Oak Blvd., 2 BLVD Pl, Ste 600**
**Houston, TX 77056**
**Tel: (713) 513 7153**
**Fax: (866) 738 0042**
**By: /s/** *Bill Smalling*
**October 6, 2016**
**State Bar No. 24075086**
**bsmalling@billsmallinglaw.com**

**ATTORNEYS FOR APPELLANT**

**DESIGNATION OF RECORD REFERENCES**

This brief follows the format suggested by the Bluebook: *e.g.*, Clerk's Record: "(CR:1.)" *See* THE BLUEBOOK, A UNIFORM SYSTEM OF CITATION, Practitioners' Note P.7 at 19-20 (Columbia Law Review Ass'n et al. eds., 18th ed. 2005).

The record in this appeal consists of the clerk's record, and the reporter's record. This brief uses the following conventions in citing the record:

**Clerk's Record:**

CR: [page]

**Reporter's Record:**

RR [vol]: [page]

**COURT OF APPEALS THIRD DISTRICT OF TEXAS AUGUST 18, 2016 NOTICE**

The one-volume reporter's record and **original Joint Exhibits 1 and 2**, prepared by Ms. LaDelle Abilez, were filed in this Court on **August 12, 2016**.

**TABLE OF CONTENTS**

                                                          **PAGE**

IDENTITY OF PARTIES AND COUNSEL……………………………………ii

TABLE OF CONTENTS............................................................................. iii

INDEX OF AUTHORITIES........................................................................1

I.      SUMMARY OF REPLY ..................................................................3

II.     ARGUMENT ....................................................................................5

A.      The TCEQ's Rule 91a Motion to Dismiss was not supported by the TCEQ's
        January 27, 2015 Filing……………………………………………...5
        1. Legal Standard…………………………………………………………5
        2. The Complaint Adequately Pleads that that substantial rights of
           Plaintiff have been prejudiced because the decision is in violation of
           statutory provisions, is in excess of the Commission's statutory
           authority, and is arbitrary and capricious……………………………..10
               a. Facts of the Case as Pleaded in the Complaint…………………....10
               b. Compliance with the Applicable TCEQ Emission Reduction Credit
                  Law as Pleaded in the Complaint……………………………………10
        3. AC Interests' original pleadings defeat the TCEQ's 91a motion and the
           Commission's 91a Motion Fails…………………………………………14

B.      The Commission Agrees that Area Sources such as AC Interests should be
        Allowed Emission Credits…………………………………………………16

III.    PRAYER.............................................................................. …..19

        CERTIFICATE OF COMPLIANCE...........................................................20

        CERTIFICATE OF SERVICE...................................................................21

        INDEX TO APPENDIX AND APPENDICIES...…………………………22

# INDEX OF AUTHORITIES

**CASES**                                                                       **Page**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984))……………………..……8

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)……..…8

*City of Dallas v. Sanchez,* 449 S.W.3d 645, 650 (Tex. App.―Dallas 2014, pet. filed). ………………………………………………………………………..9

*Drake v. Walker*, No. 05-14-00355-CV, 2015 WL 2160565, at \*3 (Tex. App.— Dallas May 8, 2015, no. pet. h.) (mem. op.)……………………………………….9

*GoDaddy.com v. Hollie Troups*, 429 S.W.3d 752, 754 (Tex. App—Beaumont 2014, pet. denied)……………………………………………………………………7

*Horizon/CMS Healthcasre Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); but see *Plascencia v. State Farm Lloyds*, No. 14-CV524-A, Doc. No. 17, at 9 (N.D. Tex. Sept 25, 2014)………………………………………………………………10

*N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983)……………7

*Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)………...…….8

*Plascencia v. State Farm Lloyds*, No. 14-CV524-A, Doc. No. 17, at 9 (N.D. Tex. Sept 25, 2014)………………………………………………………………… 10

**STATUTES**                                                                       **Page**

**Tex. Health & Safety Code**
§ 382.032 (Vernon 2010)……………………………………………….……6

**Tex. Water Code**
§5.351…………………………………………………………………..…6

**RULES**

Fed.R.Civ.P. 12(b)(6)…………………………………………………….………………7
Fed.R.Civ.P. 8(a)……………………………………………………………….………7
Tex.R.Civ.P. 45(b)……………………………………………………………………7,8, 9
Tex.R.Civ.P. 91a.1 and 91a.2…………… …………………………………7, 8, 10, 15

**TREATISES**

Patton, *Motions to Dismiss Under Texas Rule 91a*, 33 Rev. of Lit. at 492 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J., dissenting))……………....9

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

Appellant files its reply to appellee's amended brief to the Appeal of Cause No. D-1-Gn-15-000779 from the 98th Judicial District, of Travis County. Appellee's amended brief was file stamp dated September 19, 2016.

## I.    SUMMARY OF REPLY

AC Interests' action was filed within the requisite statutory deadline; namely, within 30 days of the February 26, 2015 final agency decision. Administrative exhaustion of the Deputy Director's November 19, 2014 decision was fulfilled on February 26, 2015, after the Executive Director's 30th day of silence on AC Interests' January 28, 2015 petition for review upheld the Deputy Director's November 19, 2014 denial of Emission Credits.

The TCEQ keeps repeating that the Deputy ED issued the decision denying AC Interests' application for the certification of ERCs on November 19, 2014, and the decision took effect that day, but "this suit (the 2015 suit) was not filed until February 26, 2015. By statute, any appeal had to be filed by December 19, 2014.

Although AC Interests filed the 2014 suit by the statutory deadline, this 2015 suit was not filed until long after the deadline."

AC Interests' does not believe that the "2014 suit" is relevant to this case. Since the TCEQ is adamant that the "2014 suit" is relevant to this case, AC Interests' believes that the district court erred in granting TCEQ's 91a motion to dismiss. They erred in granting the motion because the TCEQ's Rule 91a Motion to Dismiss was not supported by the TCEQ's January 27, 2015 filing.

In addition, as a policy matter, the Commission now agrees that Area Sources such as AC Interests should be allowed emission credits.

AC Interests should be allowed to move forward with their claim for emission credits. They will be able to show that they have complied with the TCEQ's standards to receive emission credits. AC Interests is being unduly harmed by being denied the opportunity to petition for the emission credits that they have earned by emitting fewer toxins into the water and air. The statute that should be examined is the Water Code as the Clean Air Act unduly harms the plaintiff. With respect to the "2014 suit", the court granting TCEQ's 91a motion to dismiss is keeping the Petitioner from obtaining the emission credits that they have earned and that they are entitled as well as denying them a vested property right.

**In a separate action (Cause No. 16-0260), AC Interests has filed a brief**

**before The Supreme Court of Texas requesting said Court to review and**

**reverse the aforementioned 91a Motion as granted by the Travis County trial**

**court.**

## II. ARGUMENT

**A.     The TCEQ's Rule 91a Motion to Dismiss Was Not Supported by the TCEQ's January 27, 2015 Filing**

### 1. Legal Standard

On December 10, 2014, AC Interests filed an action, [1] which arises out of a

decision by TCEQ to deny Plaintiff's application for certification of emission credits.

The TCEQ's action was taken "under authority delegated by the executive director of

the TCEQ" and signed by Mr. Steve Hagle, P.E., Deputy Director Office of Air,

TCEQ in a letter dated November 19, 2014. This letter was in response to Plaintiff'

revised Application for Certification of Emission Credits (Form EC-I) received by

the TCEQ on July 23, 2014. The original Form EC-1 was received by the TCEQ on

October 17, 2013, with revisions received by the TCEQ on November 13, 2013, and

April 8, 2014. The lawsuit alleges that substantial rights of Plaintiff have been

prejudiced because the decision is in violation of statutory provisions, is in excess of

the Commission's statutory authority, and is arbitrary and capricious. Because

---

[1] Plaintiff's Orig. Pet. (Appendix 7).

5

Plaintiff met the burden of proof that the application for certification of emission credits complies with all legal requirements, the application should have been granted by TCEQ. Instead, the application for certification of emission credits was denied.

The Plaintiff's application for certification of emission credits was administratively denied "under authority delegated by the executive director of the TCEQ" and signed by Mr. Steve Hagle, P.E., Deputy Director Office of Air, TCEQ in a letter dated November 19, 2014. This letter was in response to Plaintiff's revised Application for Certification of Emission Credits (Form EC-I) received by the TCEQ on July 23, 2014. The original Form EC-1 was received by the on October 17, 2013, with revisions received on November 13, 2013, and April 8, 2014. Plaintiff sought judicial review of the final decision by TCEQ in this matter pursuant to Tex. Water Code §5.351 and Texas Clean Air Act, Tex. Health & Safety Code § 382.032(a).[2] In response, on January 27, 2015, Defendants filed a Motion to Dismiss the Complaint pursuant to Texas R. Civ. P. 91.a ("Rule 91a").

Texas Rule of Civil Procedure 91a allows a party to move for dismissal of a groundless cause of action. The rule provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds
> that it has no basis in law or fact. A cause of action has no basis in law if

---

[2] Tex. Water Code §5.351 and Texas Clean Air Act, Tex. Health & Safety Code § 382.032(a).

the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.[3]

While not identical, courts have determined that Rule 91a is analogous to Federal R. Civ. P. 12(b)(6). ("Rule 12(b)(6)") [4] Rule 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief can be granted. [5] For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "enough facts to state a claim to relief that is plausible on its face." [6] The petition is liberally construed in favor of the plaintiff and all well-pleaded facts are taken as true. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."[7]

Generally, a plaintiff's burden at the pleading stage is relatively light. Federal Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." [8] In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material

---

[3] TRCP 91a.l.
[4] *GoDaddy.com v. Hollie Troups*, 429 S.W.3d 752, 754 (Tex. App—Beaumont 2014, pet. denied).
[5] Fed. R. Civ. P. 12(b)(6).
[6] *GoDaddy.com*, 429 S.W.Sd at 754.
[7] *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).
[8] Fed. R. Civ. P. 8(a).

fact as true and construe(s) them in the lights most favorable to the non-moving party." [9] A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." [10] The factual allegations must be definite enough to "raise a right to relief above the speculative level." However, a complaint does not need detailed factual allegations to survive dismissal. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. [11]

Texas' liberal pleading standards [12] distinguish the Rule 91a analysis from that of Federal Rule 12(b)(6).

A cause of action has no basis in fact if it is unsupported by factual allegations such that "no reasonable person could believe the facts pleaded." [13] U.S. Supreme Court Justice David Souter urges discounting allegations only if they essentially refer

---

[9] *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).
[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).
[11] Id.
[12] TRCP 45(b).
[13] TRCP 91a.l.

to "little green men", a "recent trip to Pluto", or "time travel." [14] One Texas Court of

Appeals described the "no reasonable person" standard as follows:

> [W]e do not consider whether such allegations are likely, or even if the conduct alleged is outlandish, but only if a reasonable person could believe the alleged conduct....[15]

Another Texas court discusses "strictly construing" Rule 91a motions because

dismissal on the pleadings is a harsh remedy, and recommends construing pleadings

liberally in favor of the plaintiff with efforts to consider the pleader's intent. [16]

In Texas, pleadings brought before state courts must contain a "statement in

plain and concise language, of the plaintiff's cause of action or the defendant's

grounds of defense . . ." [17] As a benchmark for determining which complaints are

litigated and which dismissed, this "fair notice" standard imposes a limited onus on

the plaintiff. The court will consider "whether the opposing party can ascertain from

the pleading the nature and basic issues of the controversy and what testimony will

---

[14] Patton, *Motions to Dismiss Under Texas Rule 91a*, 33 Rev. of Lit. at 492 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J., dissenting)).
[15] *Drake v. Walker*, No. 05-14-00355-CV, 2015 WL 2160565, at *3 (Tex. App.—Dallas May 8, 2015, no. pet. h.) (mem. op.).
[16] *City of Dallas v. Sanchez*, 449 S.W.3d 645, 650 (Tex. App.—Dallas 2014, pet. filed).
[17] TRCP 45(b).

be relevant." [18] Allegations that include legal conclusions will not establish grounds for objection, as long as fair notice is communicated by the complaint as a whole. [19]

**2. The "2014 Suit" Complaint Adequately Pleads that that substantial rights of Plaintiff have been prejudiced because the decision is in violation of statutory provisions, is in excess of the Commission's statutory authority, and is arbitrary and capricious**

a. **Facts of the Case as Pleaded in the Complaint** [20]

The Plaintiff's plant was destroyed by fire in 2010, and has not operated since pending issuance of an air permit amendment to authorize reconstruction of the facility. That amendment was issued in May 2013. Since this fire was a "Force Majure", Plaintiff did not shutdown of its own volition and would have operated from 2010 to present. Additionally, the TCEQ Air Permits Division specifically required that Plaintiff amend their permit (Number 22490) in order to reconstruct the plant. This permitting process required from 2010 to the permit amendment issuance date of May 17, 2013. Therefore, Plaintiff has been de facto in operation during the period from July 2010 to present.

b. **Compliance with the Applicable TCEQ Emission Reduction Credit Law as Pleaded in the Complaint[21]**

---

[18] *Horizon/CMS Healthcasre Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); but see *Plascencia v. State Farm Lloyds*, No. 14-CV524-A, Doc. No. 17, at 9 (N.D. Tex. Sept 25, 2014) (McBryde, J.) (concluding that TRCP 91a renders the issue of federal pleading standard versus state pleading standard somewhat moot).

[19] TRCP 91a.l.

[20] Plaintiff's Orig. Pet., P. 3; (Appendix 7).

[21] Plaintiff's Orig. Pet., Pages 4 through 9; (Appendix 7).

On July 14, 2014, Plaintiff submitted a revised Application for Certification of Volatile Organic Compounds ("VOC") Emission Credits for Plaintiff for 7.33 tons per year ("tpy"). This latter application is based on emissions occurring during calendar years 2006 and 2007.

This application met the certification process emission reduction strategy to ensure the five criteria for creditability are satisfied as follows. First, only reductions based on actual emissions are being certified. In determining the amount of credit generated by a reduction strategy, the baseline emissions level at which the facility emitted prior to the reduction strategy was calculated. The baseline emissions consists of the facility's activity level and emission rate averaged over any two consecutive calendar years of operation preceding the reduction strategy and following or including the most recent year of emissions inventory used in SIP determination. The baseline activity is based on the facility's actual operating hours, production rate, or amount of materials processed, stored, or combusted over the two year baseline period. The baseline emission rate is the most stringent emission rate (permit limit, MACT, RACT) applicable to the facility during the two year baseline period.

Second, the amount of credit generated from a reduction or the level of emissions reached by implementing the reduction strategy, that is the strategic

emissions level, is determined. The emission reduction is not required by any applicable local, state, or federal requirement in order to be creditable. The strategic emissions level is lower than what would be required by an applicable New Source Performance Standards (NSPS), National Emission Standards for Hazardous Air Pollutants (NESHAPs), Maximum Achievable Control Technology (MACT), Reasonably Available Control Technology (RACT), ESAD, or permit limit.

Third, for an ERC to be certified, the baseline emissions and the strategic emissions have been quantified using replicable methodologies and standard protocols. The Environmental Protection Agency's (EPA) Compilation of Air Pollution Emission Factors and the TCEQ's New Source Review (NSR) technical guidance packages have been used as calculation methodologies. Plaintiff substantiated their claimed reduction by submitting the most accurate data available to support the baseline and strategic emission levels. A hierarchy of available data used was production data, manufacturer's data (MSD Sheets), and EPA Compilation of Air Pollution Emission Factors (Emissions Inventory Improvement Program).

Fourth, only the emission reductions which are unchanging are being requested to be certified as ERCs. Fifth, Plaintiff will void Permit Number 22490 upon advisement by the TCEQ the reductions are creditable.

Finally, Plaintiff's emissions are represented in the SIP as part of the area source EI estimates because the site does not meet the definition of a major facility/stationary source, as defined in 30 Texas Administrative Code ("TAC") §116.12. The owner of a regulated entity can claim to be in the area source EI estimates if they were not required to report the site's emissions as a point source. The Plaintiff's site is not a major source as described in the reporting requirements under 30 TAC §101.10(a)(1). Since Plaintiff did not emit a minimum of 10 tons per year of volatile organic compounds (VOC) in either calendar year 2006 or 2007, Plaintiff is withdrawing the retroactive EI reports submitted on October 13, 2013 for calendar years 2006 and 2007. Additionally, Mr. Brymer's letter of June 24, 2014 states the "retroactive EI reports [were] submitted on October 13, 2014", which was a date in the future of Mr. Brymer's June 24 letter. Plaintiff reported a total of 7.88 tons of VOC emissions for 2006 and 6.79 tons of VOC emissions for 2007.

This level of emissions is verifiable from the SARA 313 reports, which were filed with the EPA for calendar years 2006 and 2007. Plaintiff reported a total of 1.88 tons of SARA reportable emissions for 2006 and 1.70 tons of SARA reportable emissions for 2007. SARA reportable are a subset of VOC emissions and are essentially a reporting of the plant's hazardous emissions for the year. If one adopts a reasonably conservative assumption that the SARA reportable are 25% of the total

plant VOC emissions, the plant's VOC emissions would be 7.52 tons for 2006 and 6.8 tons emissions for 2007. The average for the two years is 7.16 tons. This is only a 2.4% deviation from the Plaintiff's July 14, 2014 revised Application for Certification of VOC Emission Credits of 7.33 tons.

Therefore, this cause of action has a basis in law, because the allegations, taken as true, together with inferences reasonably drawn from them, entitle the claimant to the relief sought. The cause of action has basis in fact, because a reasonable person could believe the facts pleaded. This action should not be dismissed pursuant to TRCP 91a.

### 3. AC Interests' original pleadings defeat the TCEQ's 91a motion and the Commission's 91a Motion Fails

This appeal concerns whether the trial court and Court of Appeals erred by dismissing AC Interests' claim against the TCEQ. The TCEQ styled its motion as a Rule 91a motion to dismiss, and both parties refer to it as such. The motion, however, is not supported by Rule 91a. Page 1 of the Commission's January 27, 2015 91a Motion states:

> The Texas Commission on Environmental Quality (TCEQ) files this motion pursuant to Texas Rule of Civil Procedure 91a and appears for the limited purpose of proceedings on this motion. TCEQ is not appearing for other purposes….

> Under Rule 91a, "a party may move to dismiss a cause of action on the

14

grounds that it has no basis in law or fact." [22] TRCP §91a.2 states: "A motion to dismiss must state that it is made pursuant to this rule, must identify each *cause of action to which it is addressed*, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both. (emphasis added)" [23] The Court of Appeals even admitted that TRCP §91a was the wrong rule. Therefore, the TCEQ's Rule 91a motion should have been dismissed by the Trial Court.

The TCEQ motion pursuant to TRCP 91a.1 states: "Even taking AC Interests' factual allegations as true, there is no basis in law for the Court to grant any of the relief AC Interests seeks by any of its causes of action." TRCP 91a.1 states:

> …. a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if *no reasonable person* could believe *the facts pleaded*. (emphasis added)[24]

AC Interests' December 10, 2014 pleadings cited reasonable grounds for the lawsuit both in law and in fact. Among the citations in the pleadings are references to TCEQ proposed rules, which among other things repeal provisions for generating credits from area and mobile sources and for use by mobile sources. We argue that

---

[22] TRCP 91a.1.
[23] TRCP 91a.2.
[24] TRCP 91a.1.

this defeats the TCEQ's 91a Motion, and this instant Petition before The Supreme Court of Texas should be granted.

**B.     The Commission Agrees that Area Sources such as AC Interests should be Allowed Emission Credits**

On or about November 21, 2014, the TCEQ staff submitted a recommendation to the Commission that hearings be held regarding the amendments to 30 TAC Chapter 101 as it relates to Emission Reduction Credits ("ERCs"). The proposal as it relates to 30 TAC §101.302 would have arbitrarily removed "area sources", such as AC Interests, from any future consideration of being granted ERCs, with a few very narrow exceptions. The Commission approved this hearing request on December 10, 2014. The overarching purpose behind the TCEQ staff's proposal for this rule change is, on information and belief, that there has never been an ERC issued to an area source by the Commission, and the TCEQ staff's objective was to embed this arbitrary policy into the TCEQ's ERC rules.

The Commission's June 3, 2015 adoption of proposed changes to 30 Chapter 101 disavowed the staff's November 21, 2014 recommendation that area sources be removed from receiving ERC allowances under 30 TAC §101.302. In this action, the Commission, with a few minor edits, retained the previous language in 30 TAC §101.302 as it related to area sources.

The TCEQ staff effectively shortened the appeal time of the ERC denial from December 19, 2014 to December 10, 2014; that is, from 30 days to 21 days. The rationale for this statement is as follows. On or about November 21, 2014[25], the TCEQ staff submitted a recommendation to the Commission that hearings be held regarding the amendments to 30 TAC Chapter 101 as it relates to ERCs. As stated above, the Commission approved this hearing request on December 10, 2014, which is the date AC Interests filed suit on the TCEQ.

This is relevant because the proposed regulatory change would have hypothetically flatly denied ERCs to an area source such as AC Interests.[26] This potentially could have made difficult proving the case that AC Interests under the regulation were entitled to ERCs when the regulation projected to be in effect at the time the case would be heard would likely state specifically that AC Interests is denied any entitlements to ERCs.

Now the Commission is reversing its field and is in fact in the process of proposing modifications to the ERC rules, which would require the TCEQ staff to consider and grant ERCs to area sources. Appendix 9 includes an announcement of

---

[25] Said recommendation was signed by the same Deputy Executive Director that signed the AC Interests ERC denial letter on November 19, 2014.

[26] On June 3, 2015 the Commission rejected the TCEQ staff's proposal and retained 30 TAC §101.302 essentially as it previously existed. However, on December 10, 2014, the probability was that the Commission would adopt the changes as proposed by the TCEQ staff.

preliminary public meetings regarding said proposed modifications to the ERC rules.

This is a step in the right direction; however, since TCEQ rule changes are rarely

retroactive, it is unlikely that the contemplated rule changes will benefit AC Interests.

### III. PRAYER

AC Interests asks this Court to reverse the Amended Plea to the Jurisdiction granted in favor of Appellee, Texas Commission on Environmental Quality. The Appellant prays that the district court's order be reversed.

The Law Office of C. William Smalling, PC
1700 Post Oak Blvd., 2 BLVD Pl, Ste 600
Houston, TX 77056
Tel: (713) 513 7153
Fax: (866) 738 0042

By: /s/ *Bill Smalling*
October 6, 2016
State Bar No. 24075086
bsmalling@billsmallinglaw.com
Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

As required by Texas Rules of Appellate Procedure §§9.4(i)(2)(E) and (3), I certify that this reply contains 3,544 words (less than 7,500). This is a computer generated document created in Microsoft Word. In making this certificate, I have relied on the word count provided by the computer program used to prepare the document.

**The Law Office of C. William Smalling, PC**
**1700 Post Oak Blvd., 2 BLVD Pl, Ste 600**
**Houston, TX 77056**
**Tel: (713) 513 7153**
**Fax: (866) 738 0042**
**/s/** *Bill Smalling*

**By: Bill Smalling**
**October 6, 2016**
**State Bar No. 24075086**
**bsmalling@billsmallinglaw.com**

**ATTORNEYS FOR PETITIONER**

**AC INTERESTS, L.P. FORMERLY AMERICAN COATINGS, L.P.**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been served on the following via hand delivery, express mail, electronic mail, facsimile, and/or U.S. First Class Mail, on or before the 6th day of October, 2016.

1.  The Commission represented by Cynthia Woelk, Assistant Attorney General, Texas Attorney General, Environmental Protection Div. (MC-066), P.O. Box 12548, Austin, Texas 78711-2548, Vox: (512) 463-2012, Fax: (512) 320-0911. Delivery Address: Office of the Attorney General, 300 W. 15th Street, Austin, TX 78701. E-mail: cynthia.woelk@texasattorneygeneral.gov.

<div style="margin-left: 40%;">

The Law Office of C. William Smalling, PC
1700 Post Oak Blvd., 2 BLVD Place, Suite 600
Houston, TX 77056
Tel: (713) 513 7153
Fax: (866) 738 0042


By: /s/ *Bill Smalling*
October 6, 2016
C. William Smalling
State Bar No. 24075086
bsmalling@billsmallinglaw.com
Attorneys for Plaintiff.

</div>

**INDEX TO APPENDIX AND APPENDICIES**

| APPENDIX TAB NO. | DOCUMENT NAME OR DESCRIPTION |
|---|---|
| **Mandatory** | |
| *The text of any rule, regulation, ordinance, statute, constitutional provision, or other law on which the argument is based (excluding case law).* | |
| 1 | Tex. Health & Safety Code § 382.032 (Vernon 2010) |
| 2 | Tex. Water Code §5.351 |
| 3 | Fed. R. Civ. P. 12(b)(6) |
| 4 | Fed. R. Civ. P. 8(a) |
| 5 | Tex. R. Civ. P. 45(b) |
| 6 | Tex. R. Civ. P. 91a.1 and 91a.2 |
| **Optional** | |
| 7 | AC Interests' December 10, 2014 pleading. |
| 8 | AC Interests' February 19, 2015 Response to Commission's 91a Motion |
| 9 | Announcement of Preliminary Public Meetings Regarding Proposed Modifications to ERC Rules |

# APPENDIX 1

Sec. 382.032. APPEAL OF COMMISSION ACTION. (a) A person affected by a ruling, order, decision, or other act of the commission or of the executive director, if an appeal to the commission is not provided, may appeal the action by filing a petition in a district court of Travis County.

(b) The petition must be filed within 30 days after the date of the commission's or executive director's action or, in the case of a ruling, order, or decision, within 30 days after the effective date of the ruling, order, or decision. If the appeal relates to the commission's failure to take final action on an application for a federal operating permit, a reopening of a federal operating permit, a revision to a federal operating permit, or a permit renewal application for a federal operating permit in accordance with Section 382.0542(b), the petition may be filed at any time before the commission or the executive director takes final action.

(c) Service of citation on the commission must be accomplished within 30 days after the date on which the petition is filed. Citation may be served on the executive director or any commission member.

(d) The plaintiff shall pursue the action with reasonable diligence. If the plaintiff does not prosecute the action within one year after the date on which the action is filed, the court shall presume that the action has been abandoned. The court shall dismiss the suit on a motion for dismissal made by the attorney general unless the plaintiff, after receiving due notice, can show good and sufficient cause for the delay.

(e) In an appeal of an action of the commission or executive director other than cancellation or suspension of a variance, the issue is whether the action is invalid, arbitrary, or unreasonable.

(f) An appeal of the cancellation or suspension of a variance must be tried in the same manner as appeals from the justice court to the county court.

Acts 1989, 71st Leg., ch. 678, Sec. 1, eff. Sept. 1, 1989. Amended by Acts 1993, 73rd Leg., ch. 485, Sec. 5, eff. June 9, 1993; Acts 1995, 74th Leg., ch. 76, Sec. 11.155, eff. Sept. 1, 1995.

# APPENDIX 2

Texas Water Code § 5.351.   Judicial Review of Commission Acts

(a)  A person affected by a ruling, order, decision, or other act of the commission may file a petition to review, set aside, modify, or suspend the act of the commission.

(b)  A person affected by a ruling, order, or decision of the commission must file his petition within 30 days after the effective date of the ruling, order, or decision.   A person affected by an act other than a ruling, order, or decision must file his petition within 30 days after the date the commission performed the act.

**APPENDIX 3**

Fed.R.Civ.P. 12. Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing

(b) HOW TO PRESENT DEFENSES. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1)-(5) ………;

(6) failure to state a claim upon which relief can be granted; and….

**APPENDIX 4**

Fed.R.Civ.P. 8. General Rules of Pleading

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

    (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

    (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

    (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

**APPENDIX 5**

Tex.R.Civ.P. 45(b)  DEFINITION AND SYSTEM

Pleadings in the district and county courts shall

(a) be by petition and answer;

(b) consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense. That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole; and….

**APPENDIX 6**

RULE 91a.  DISMISSAL OF BASELESS CAUSES OF ACTION

91a.1 Motion and Grounds.  Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact.  A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them do not entitle the claimant to the relief sought.  A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

91a.2 Contents of Motion.  A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both.

**D-1-GN-14-005160**

CAUSE NO. _____

| | | |
|---|---|---|
| AC INTERESTS, L.P. FORMERLY | § | IN THE DISTRICT COURT |
| AMERICAN COATINGS, L.P. | § | |
| Plaintiff | § | |
| v. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| TEXAS COMMISSION ON | § 53RD | |
| ENVIRONMENTAL QUALITY, | § | \_\_\_\_\_ JUDICIAL DISTRICT |
| Defendant | § | |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, AC INTERESTS, L.P. FORMERLY AMERICAN COATINGS, L.P. ("Plaintiff") and files this its Original Petition against the Texas Commission on Environmental Quality (the "Commission" or "TCEQ") and for cause of action would respectfully show the Court as follows:

### I. DISCOVERY CONTROL PLAN

This cause of action is a judicial review of an action by an administrative agency and therefore will be based on the administrative record. Designation of a level of discovery is level 1 discovery.

### II. BACKGROUND

This lawsuit arises out of a decision by TCEQ to deny Plaintiff's application for certification of emission credits. The TCEQ's action was taken "under authority delegated by the executive director of the TCEQ" and signed by Mr. Steve Hagle, P.E., Deputy Director Office of Air, Texas Commission on Environmental Quality in a letter dated November 19, 2014. This letter was in response to Plaintiff' revised *Application for Certification of Emission Credits* (Form EC-I) received by the TCEQ on July 23, 2014. The original Form EC-1 was received by the on October 17, 2013, with revisions received on November 13, 2013, and April 8, 2014.

AC INTERESTS, L.P. FORMERLY
AMERICAN COATINGS, L.P.   v. TCEQ          1

Substantial rights of Plaintiff have been prejudiced because the decision is in violation of statutory provisions, is in excess of the Commission's statutory authority, and is arbitrary and capricious. Because Plaintiff met the burden of proof that the application for certification of emission credits complies with all legal requirements, the application should have been granted by TCEQ. Instead, the application for certification of emission credits was denied. Plaintiff is seeking judicial review of this decision by TCEQ and is requesting that it be reversed by this Court.

## III. PROCEDURAL BACKGROUND

Plaintiff's application for certification of emission credits was administratively denied "under authority delegated by the executive director of the TCEQ" and signed by Mr. Steve Hagle, P.E., Deputy Director Office of Air, Texas Commission on Environmental Quality in a letter dated November 19, 2014. This letter was in response to Plaintiff's revised *Application for Certification of Emission Credits* (Form EC-I) received by the TCEQ on July 23, 2014. The original Form EC-1 was received by the on October 17, 2013, with revisions received on November 13, 2013, and April 8, 2014. Pursuant to 30 TAC §50.131(c)(5), Mr. Hagle's letter constitutes final administrative action by the TCEQ. Plaintiff seeks judicial review of the final decision by TCEQ in this matter pursuant to the Texas Commission on Environmental Quality, TEX. WATER CODE §5.351 and Texas Clean Air Act, TEX. HEALTH & SAFETY CODE § 382.032(a).

## IV. VENUE

Venue properly exists in Travis County, Texas, pursuant to the Texas Clean Air Act, TEX. HEALTH & SAFETY CODE § 382.032.

## V. PARTIES

AC INTERESTS, L.P. FORMERLY
 AMERICAN COATINGS, L.P.   v. TCEQ          2

(1) The PLAINTIFF'S plant was destroyed by fire in 2010, and has not operated since pending issuance of an air permit amendment to authorize reconstruction of the facility. That amendment was issued in May 2013. Since this fire was a "Force Majure", Plaintiff did not shutdown of its own volition and would have operated from 2010 to present. Additionally, the TCEQ Air Permits Division specifically required that Plaintiff amend their permit (Number 22490) in order to reconstruct the plant. This permitting process required from 2010 to the permit amendment issuance date of May 17, 2013. Therefore, Plaintiff has been de facto in operation during the period from July 2010 to present.

(2)The Commission is an agency of the State of Texas. Service on the Commission may be accomplished by delivering a copy of this instrument to Richard Hyde, P.E., Executive Director of TCEQ, at 12100 Park 35 Circle, Austin, Texas, 78753, pursuant to the Texas Clean Air Act, TEX. HEALTH & SAFETY CODE § 382.032.

(3) The TCEQ Executive Director, represented by Steve Shepherd and Susan White, P.O. Box 13087, MC-173, Austin, Texas, 78711-3087.

Copies of this Plaintiff's Original Petition have been sent by U.S. certified mail, return receipt requested, to each of the parties as indicated on the attached Certificate of Service.

## VI. TRANSMISSION OF RECORD

Demand is hereby made that the Commission transmit the original or a certified copy of the entire record of the agency's administrative file relating to Plaintiff's emission credit application to the Court within the time permitted by law.

## VII. GROUNDS FOR REVERSAL OR REMAND

Plaintiff asserts not only a violation of procedural Due Process, but also a challenge to substantive Due Process. Both federal and state constitutions require both procedural and

substantive Due Process protections. (Barshop v. Medina County Underground Water Conservation District, 925 SW2d 618, 632 (Tex. 1996); Texas Workers' Comp. Com'n v. Garcia, 893 SW2d 504, 525-26 (Tex. 1995); Eggemeyer v. Eggemeyer, 554 SW2d 137,140 (Tex. 1977)). Substantive Due Process demands that governmental action not be arbitrary, unreasonable, or capricious and that the means utilized by the state have a real and substantial relation to the object sought to be obtained. Plaintiff request's the court to determine whether the agency decision complied with substantive Due Process by being supported by substantial evidence. (Continental Casualty Co. v. Functional Restoration Ass'n, 964 SW2d 776, 782 (Tex.App. Austin 1998)).

Substantial rights of Plaintiff have been prejudiced because the decision is in violation of statutory provisions, is in excess of the Commission's statutory authority, and is arbitrary and capricious. Because Plaintiff met the burden of proof that the application for certification of emission credits complies with all legal requirements, the application should have been granted by TCEQ. Instead, the application for certification of emission credits was denied. Plaintiff is seeking judicial review of this decision by TCEQ and is requesting that it be reversed by this Court. (Texas Commission on Environmental Quality, TEX. WATER CODE §5.351 and Texas Clean Air Act, TEX. HEALTH & SAFETY CODE § 382.032(a)).

## VIII. DETAIL OF AGENCY ERRORS

A.      Creditable Emissions

On July 14, 2014, Plaintiff submitted a revised Application for Certification of Volatile Organic Compounds ("VOC") Emission Credits for Plaintiff for 7.33 tons per year ("tpy"). This latter application is based on emissions occurring during calendar years 2006 and 2007. Enclosed is the required Form EC-1 and accompanying documentation. We are requesting that the TCEQ approve this application.

For the Manufacturing Vent (EPN M-1) improved process parameters were used to calculate emissions for the years 2006 and 2007. This is summarized in Table 1. The EPA Compilation of Air Pollution Emission Factors (Emissions Inventory Improvement Program) [AP-42] was used to calculate emissions from EPN M-1. The emission factors were used to calculate total emissions (VOC, Ammonia, and Acetone) from EPN M-1. In Table 2, these emissions were divided in accordance with the Maximum Allowable Emission Rate Table ("MAERT") in Permit Number 22490. The allowable emissions in the Permit 22490 MAERT were based on a TCEQ review of Plaintiff's historical production for the years 2005 through 2009.

**Table 1**

| Source EPN | Pollutant | Year | Calculation of ERCs | | | | |
|---|---|---|---|---|---|---|---|
| | | | Baseline Activity | Allowable Emissions | | | |
| | | | Activity | BER | RER | ER | Tons |
| M-1 | VOC | 2006 | 4736 Batches | 3.12 pounds VOC per batch* | None | 7.38 | 19.12 |
| | | 2007 | 4009 Batches | 3.14 pounds VOC per batch** | None | 6.29 | 19.12 |
| M-1 | VOC Average 2006-2007 | | | | | 6.84 | |
| F-1 | VOC Average 2006-2007 | | | | | 0.49 | |
| Total | VOC Average 2006-2007 | | | | | **7.33** | |
| | | 2006* | | 4.80 pounds VOC + Ammonia + Acetone per batch* | | | |
| | | 2007** | | 4.83 pounds VOC + Ammonia + Acetone per batch** | | | |

**Table 2**

| EPN | SOURCE | VOC + Ammonia + Acetone | VOC | Ammonia (Non-VOC) | Acetone (Non-VOC) |
|---|---|---|---|---|---|
| | Year 2006 | TPY | TPY | TPY | TPY |
| M-1 | Paint Manufacturing | 11.371 | 7.383*** | 0.745* | 3.243** |
| FUG-1 | Pipe Components Fugitive | 0.490 | 0.490 | 0.000 | 0.000 |
| TOTAL | 2006 | 11.861 | **7.873** | 0.745 | 3.243 |

| EPN | SOURCE | VOC + Ammonia + Acetone | VOC | Ammonia (Non-VOC) | Acetone (Non-VOC) |
|---|---|---|---|---|---|
| | Year 2007 | TPY | TPY | TPY | TPY |
| M-1 | Paint Manufacturing | 9.693 | 6.293*** | 0.635* | 2.764** |
| FUG-1 | Pipe Components Fugitive | 0.490 | 0.490 | 0.000 | 0.000 |
| TOTAL | 2007 | 10.183 | **6.783** | 0.635 | 2.764 |

| Average 2006-2007 VOC Emission Credits | | 7.328 | | |
|---|---|---|---|---|

*Ammonia = 6.55% of EPN M-1 VOC + Ammonia + Acetone [ See below: 1.94/29.63*100]

**Acetone = 28.52% of EPN M-1 VOC + Ammonia + Acetone [ See below: 8.45/29.63*100]

***VOC = 64.93% of EPN M-1 VOC + Ammonia + Acetone [ See below: 19.24/29.63*100]

| Permit 22490 MAERT | | | |
|---|---|---|---|
| Emission Point No. | Source Name | Air Contaminant Name | Emissions |
| | | | TPY |
| M-1 | Manufacturing | VOC | 19.24 |
| | | Ammonia | 1.94 |
| | | Exempt Solvent (Acetone) | 8.45 |
| | | Total | 29.63 |

This application met the certification process emission reduction strategy to ensure the five criteria for creditability are satisfied as follows. First, only reductions based on actual emissions are being certified. In determining the amount of credit generated by a reduction strategy, the baseline emissions level at which the facility emitted prior to the reduction strategy was calculated. The baseline emissions consists of the facility's activity level and emission rate

averaged over any two consecutive calendar years of operation preceding the reduction strategy and following or including the most recent year of emissions inventory used in SIP determination. The baseline activity is based on the facility's actual operating hours, production rate, or amount of materials processed, stored, or combusted over the two year baseline period. The baseline emission rate is the most stringent emission rate (permit limit, MACT, RACT) applicable to the facility during the two year baseline period.

Second, the amount of credit generated from a reduction or the level of emissions reached by implementing the reduction strategy, that is the strategic emissions level, is determined. The emission reduction is not required by any applicable local, state, or federal requirement in order to be creditable. The strategic emissions level is lower than what would be required by an applicable New Source Performance Standards (NSPS), National Emission Standards for Hazardous Air Pollutants (NESHAPs), Maximum Achievable Control Technology (MACT), Reasonably Available Control Technology (RACT), ESAD, or permit limit.

Third, for an ERC to be certified, the baseline emissions and the strategic emissions have been quantified using replicable methodologies and standard protocols. The Environmental Protection Agency's (EPA) Compilation of Air Pollution Emission Factors and the TCEQ's New Source Review (NSR) technical guidance packages have been used as calculation methodologies. Plaintiff substantiated their claimed reduction by submitting the most accurate data available to support the baseline and strategic emission levels. A hierarchy of available data used was production data, manufacturer's data (MSD Sheets), and EPA Compilation of Air Pollution Emission Factors (Emissions Inventory Improvement Program).

Fourth, only the emission reductions which are unchanging are being requested to be certified as ERCs. Fifth, Plaintiff will void Permit Number 22490 upon advisement by the TCEQ the reductions are creditable.

Finally, Plaintiff's emissions are represented in the SIP as part of the area source EI estimates because the site does not meet the definition of a major facility/stationary source, as defined in 30 Texas Administrative Code (TAC) §116.12. The owner of a regulated entity can claim to be in the area source EI estimates if they were not required to report the site's emissions as a point source. The Plaintiff's site is not a major source as described in the reporting requirements under 30 TAC §101.10(a)(1). Since Plaintiff did not emit a minimum of 10 tons per year of volatile organic compounds (VOC) in either calendar year 2006 or 2007, Plaintiff is withdrawing the retroactive EI reports submitted on October 13, 2013 for calendar years 2006 and 2007. Additionally, Mr. Brymer's letter of June 24, 2014 states the "retroactive EI reports [were] submitted on October 13, 2014", which was a date in the future of Mr. Brymer's June 24 letter. Plaintiff reported a total of 7.88 tons of VOC emissions for 2006 and 6.79 tons of VOC emissions for 2007.

This level of emissions is verifiable from the SARA 313 reports, which were filed with the EPA for calendar years 2006 and 2007. Plaintiff reported a total of 1.88 tons of SARA reportable emissions for 2006 and 1.70 tons of SARA reportable emissions for 2007. SARA reportable are a subset of VOC emissions and are essentially a reporting of the plant's hazardous emissions for the year. If one adopts a reasonably conservative assumption that the SARA reportable are 25% of the total plant VOC emissions, the plant's VOC emissions would be 7.52 tons for 2006 and 6.8 tons emissions for 2007. The average for the two years is 7.16 tons. This is only a 2.4% deviation from the Plaintiff's July 14, 2014 revised Application for Certification of

VOC Emission Credits of 7.33 tons. Therefore, Plaintiff's site did not exceed ten tpy of VOC emissions for either 2006 or 2007 and was not subject to the reporting requirements under §101.10(a)(2).

A line item for ALL COATINGS AND RELATED PRODUCTS was referenced in Appendix 1, Sheet 12 - Summary of TCEQ Area Source Controls and Emission Reductions. (Houston-Galveston 1-Hour Ozone Nonattainment Area, 2004 Rate of Progress Demonstration Calculation Spreadsheet, HGA_ROP_Appendix1_update092304_Stars). The reference was as follows:

| CATEGORY WITH RULES | VOC Reductions (tons per day) | | | |
| | Calendar Year | | | |
| | 1990 | 2002 | 2005 | 2007 |
|---|---|---|---|---|
| AUTO REFINISHING | 0.30 | 0.31 | 0.32 | 0.32 |
| FACTORY FINISHED WOOD | 0.00 | 0.14 | 0.15 | 0.15 |
| WOOD FURNITURE | 0.00 | 0.30 | 0.31 | 0.32 |
| METAL FURNITURE | 0.00 | 0.08 | 0.08 | 0.08 |
| METAL CANS | 0.01 | 0.01 | 0.01 | 0.01 |
| METAL COILS | 1.02 | 1.04 | 1.08 | 1.11 |
| MACHINERY & EQUIPMENT | 0.66 | 0.67 | 0.69 | 0.71 |
| MISC. MFG. | 0.00 | 0.38 | 0.39 | 0.40 |
| SURFACE CLEANING | 2.16 | 2.20 | 2.27 | 2.34 |
| PETROLEUM DRY CLEANERS | 0.00 | 6.82 | 7.05 | 7.25 |
| ALL PERSONAL CARE PRODUCTS | 0.00 | 6.12 | 6.33 | 6.51 |
| ALL HOUSEHOLD PRODUCTS | 0.00 | 4.06 | 4.19 | 4.31 |
| ALL AUTOMOTIVE AFTERMARKET PRODUCTS | 0.00 | 2.62 | 2.71 | 2.78 |
| **ALL COATINGS AND RELATED PRODUCTS** | **0.00** | **6.90** | **7.13** | **7.33** |
| ALL ADHESIVES AND SEALANTS | 0.00 | 1.03 | 1.07 | 1.10 |
| ALL FIFRA RELATED PRODUCTS | 0.00 | 1.88 | 1.94 | 2.00 |
| MISC. PRODUCTS | 0.00 | 2.21 | 2.29 | 2.35 |
| CUTBACK ASPHALT | 0.01 | 0.01 | 0.01 | 0.01 |
| VEHICLE REFUELING - STAGE II | 0.00 | 9.02 | 9.32 | 9.59 |
| TANK TRUCK UNLOADING - STAGE I | 0.00 | 10.41 | 10.76 | 11.06 |
| TANK TRUCKS IN TRANSIT | 0.00 | 0.09 | 0.09 | 0.09 |
| MUNICIPAL LANDFILLS | 0.00 | 4.50 | 4.65 | 4.78 |

| TOTAL | | 4.16 | 60.79 | 62.83 | 64.62 |
|---|---|---|---|---|---|

The first six paragraphs of (this) Article VIII.A explain clearly why the Plaintiff's 2006 and 2007 VOC emission were 7.88 tons and 6.79 tons, respectively, rather than the originally reported that the site-wide VOC emissions of 22.997 tons and 19.679 tons, respectively. The primary reason for the difference was that the non-VOCs acetone and ammonia were erroneously included in the previously submitted plant-wide VOC emission rate calculations. In their letter of November 19, 2014, the TCEQ completely discounted this explanation in part of their denial of this request for emission credits when they stated:

The emissions data provided for the 2006 and 2007 baseline years contradicts the information that was provided in your previous Form EC-1 submissions as well as the retroactive 2006 and 2007 emissions inventory questionnaires. Specifically, American Coatings originally reported that the site-wide volatile organic compound (VOC) emissions were 22.997 tons and 19.679 tons in 2006 and 2007, respectively; however, the most recent Form EC-1 provides the actual VOC emissions as 7.88 tons and 6.79 tons, respectively. In accordance with 30 Texas Administrative Code (TAC) §101.302(c)(A), the reduction must be quantifiable and real. Due to the conflicting information that has been provided, the quantification of the VOC emissions from the American Coatings' site is questionable and it cannot be determined that the reported emissions accurately represent the actual VOC emissions from the American Coatings' site during the 2006 and 2007 baseline years.

Later in their letter of November 19, 2014, the TCEQ goes on to state: "Due to the contradictory emissions information provided in the applications, it cannot be determined if

Plaintiffs was an area source or a point source that failed to report to the TCEQ point source emissions inventory (EI)."

Plaintiff believes they have provided more than an adequate explanation of the discrepancy in emissions and requests that the TCEQ accept Plaintiff's 2006 and 2007 VOC emissions of 7.88 tons and 6.79 tons, respectively. Additionally, the TCEQ processes thousands of air permit applications in various forms each year. In this attorney's 45 year experience, the majority of the applications experience some type of emission calculation revision between the original application submittal and the permit issuance. Again, this attorney, in his experience, has never heard of a case where a permit has been denied because of revised air emission estimates.

B.    TCEQ SIP versus TCEQ Regulation Emissions Inventory Reporting Requirements

Plaintiff was unaware of the EI reporting requirements and cites the HGB 1997 Eight-Hour Ozone Nonattainment Area Reasonable Further Progress ("RFP") State Implementation Plan (SIP) Revision adopted on May 23, 2007 as a cause for failure to report. Specifically, the SIP narrative states that the TCEQ will mail an annual EI questionnaire to sources subject to the reporting requirements under §101.10. The SIP is an enforceable plan developed at the state level that explains how the state will comply with air quality standards according to the Federal Clean Air Act. Under the U.S. Supreme Court's *Chevron* doctrine (467 U.S. 837; Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. (No. 82-1005); June 25, 1984), the aforementioned SIP narrative becomes equivalent to TCEQ regulations. The Supreme Court held that "The EPA's plantwide definition is a permissible construction of the statutory term 'stationary source.'"

Later the opinion went on to state:

As previously noted, prior to the 1977 Amendments, the EPA had adhered to a plantwide definition of the term "source" under a NSPS program. After adoption of the 1977

Amendments, proposals for a plantwide definition were considered in at least three formal proceedings.

In January, 1979, the EPA considered the question whether the same restriction on new construction in nonattainment areas that had been included in its December, 1976, Ruling [p854] should be required in the revised SIP's that were scheduled to go into effect in July, 1979. After noting that the 1976 Ruling was ambiguous on the question "whether a plant with a number of different processes and emission points would be considered a single source," 44 Fed.Reg. 3276 (1979), the EPA, in effect, provided a bifurcated answer to that question. In those areas that did not have a revised SIP in effect by July, 1979, the EPA rejected the plantwide definition; on the other hand, it expressly concluded that the plantwide approach would be permissible in certain circumstances if authorized by an approved SIP. It stated:

Where a state implementation plan is revised and implemented to satisfy the requirements of Part D, including the reasonable further progress requirement, the plan requirements for major modifications may exempt modifications of existing facilities that are accompanied by intrasource offsets, so that there is no net increase in emissions. The agency endorses such exemptions, which would provide greater flexibility to sources to effectively manage their air emissions at least cost.

In April, and again in September, 1979, the EPA published additional comments (emphasis added) in which it indicated that revised SIP's could adopt the plantwide definition of source in nonattainment areas in certain circumstances, 44 FR at 20372, 20379, 51924, 51951, and 51958 (1979).

This is clearly a case of the court using a non-regulatory citation to modify a regulatory citation. In terms of public notice, the Texas SIP rises to at least the level of a *Federal Register* notice. Therefore,

Plaintiff believes that its construction of the above described SIP's modification of the TCEQ's Emission Inventory regulation is correct.

Coincidentally, Justice Stevens' opinion stated, "We hold that the EPA's definition of the term "source" is a permissible construction of the statute which seeks to accommodate progress in reducing air pollution with economic growth." This is precisely one of the Plaintiff's goals in its application for emission credits.

At the state level, the Texas Administrative Procedure Act (APA) defines a rule as follows: "Rule" (See TEX. GOV'T CODE § 2003(6)):

(A) means a state agency statement of general applicability that:

(i) implements, interprets, or prescribes law or policy; or

(ii) describes the procedure or practice requirements of a state agency;

(B) includes the amendment or repeal of a prior rule; and

(C) does not include a statement regarding only the internal management or

organization of a state agency and not affecting private rights or procedures.'

The statement described in the first paragraph of Article VIII.B meets the elements of a rule as described in TEX. GOV'T CODE § 2003(6). Additionally, the statement has been subjected to public notice and comment as part of the *Houston-Galveston-Brazoria (HGB) Reasonable Further Progress (RFP) State Implementation Plan (SIP) Revision for the 1997 Eight-Hour Ozone Standard* on page 2-1. This plan was proposed on September 23, 2009 and adopted on March 10, 2010. The commission conducted public hearings on the plan in Houston on October 28, 2009 at 2:00 p.m. and 6:00 p.m., and in Austin on October 29, 2009 at 2:00 p.m. During the comment period, which closed on November 9, 2009, the commission received comments from the Clean Air Institute of Texas (CAIT), KIDS for Clean Air (KIDS), the Sustainable Energy and Economic Development (SEED) Coalition, the United States Environmental Protection Agency (EPA), and one individual. In addition,

CAIT, KIDS, SEED, and one individual also incorporated by reference any comments submitted by Environmental Defense (ED) and/or the Sierra Club; however, no comments were received from either ED or the Sierra Club concerning the HGB RFP SIP revision. Also, the plan received EPA approval and was published in the Federal Register on January 2, 2014. (79 FR 51).

The statement described in the first paragraph of Article VIII.B was also on Page 2-1 of the *2007 HGB 1997 Eight-Hour Ozone Nonattainment Area RFP SIP Revision*, which was subject to public notice and comment. This plan was proposed on December 13, 2006 and adopted on May 23, 2007. The plan received EPA approval and was published in the Federal Register on April 22, 2009. (74 FR 18298). Prior to that, the statement described in the first paragraph of Article VIII.B was also on Page 2-1 of the *SIP Revision: HGB One-Hour Ozone Post 1999 ROP, October 27, 2004*, which was subject to public notice and comment. This plan was proposed on June 23, 2004 and adopted on October 27, 2004. The plan received EPA approval and was published in the Federal Register on February 14, 2005. (70 FR 7407).

However, Plaintiff's argument in this regard was completely discounted in the TCEQ's November 19 letter.

C.    Area Source Status of Plaintiff

Plaintiff is not "an account which meets the definition of a major facility/stationary source, as defined in §116.12 of this title (relating to Nonattainment Review Definitions)" therefore, it is an area source under §101.300(3). The document *Revisions to the State Implementation Plan (SIP) for the Control of Ozone Air Pollution Houston-Galveston-Brazoria Non-Attainment Area Reasonable Further Progress SIP* dated May 23, 2007, on Page 2-1 states: " 2.2.1 Emissions Inventory Development Point source emissions and industrial process operating data are collected annually from sites that meet the reporting requirements of 30 Texas Administrative Code, §101.10. **To collect data, the commission mails EI Questionnaires**

**(EIQs) to all sources identified as meeting these reporting requirements.** (emphasis added)**.** Page 2-3 of the referenced document also states: "2.3 AREA SOURCES 2.3.1 Emissions Inventory Development Area sources are commercial, small-scale industrial and residential sources that use materials or operate processes that can generate emissions. Area sources are too small to meet the reporting criteria for <u>major</u> point sources … Area sources can be …hydrocarbon evaporative emissions …. Examples of evaporative sources include … industrial coatings,…"

The TCEQ Emissions Inventory program as it exists today began with the submittal of the calendar year 1990 emissions inventory in late 1991. These dates coincide with the signing of the Federal Clean Air Act amendments in late 1990 by President George Bush. This attorney was the Technical Department manager of the Houston Regional office of the old Texas Air Control Board ("TACB") during this period. During the emissions inventory development phase in early 1991, this attorney (he was not an attorney at the time) was requested to provide a listing of medium sized sources, which he believed should be required to submit an emissions inventory and which were located in the HGB area. The TACB Austin Emissions Inventory group requested the undersigned attorney to provide this list because they knew that he was in charge of all inspection activity in the Houston Region and they, the EI group, had no idea who, other than the obvious very large sources, to send an Emissions Inventory request. Plaintiff's plant could not possibly have been on the list, because the company did not exist as a TACB account at that time.

Most area sources on TCEQ's current emissions inventory accounts list are listed because either (1) their names were submitted as part of this original 1991 survey and voluntarily continued to submit an Emissions Inventory or (2) they were originally major sources, which have subsequently become area sources. Plaintiff's plant later became a TACB account, when they applied for an air permit in 1993. For this reason alone, Plaintiff's plant should have been

included in the TCEQ's Emissions Inventory database, because the TCEQ database should have been set up to send newly permitted sources an emissions inventory request.

Plaintiff believes the area source estimates used in the SIP cover all area sources in the HGB non-attainment area. This includes area sources, who the commission did <u>not</u> mail EI Questionnaires (EIQs) to as sources identified as meeting the EI reporting requirements. The reasoning is that it would be reasonably foreseeable that the commission would not identify (that is, it would overlook) some area sources in the HGB area, which technically met the EI reporting guidelines. There are a number of such sources in the HGB non-attainment area. These likely have been missed because of one or more of the following reasons:

1. The EI database did not search the Permits database for sources with VOC emissions of between 10 and 25 tons per year, which were not in the EI database; and/or

2. The Region 12 office did not have the manpower to locate and inspect all sources with VOC emissions of between 10 and 25 tons per year, and/or

3. Pursuant to TCEQ's own studies, there are a number of sources in the HGB area with VOC emissions of between 10 and 25 tons per year, which are not in the EI database, and in fact, the SIP area source inventory has been modified to account for these sources.

The Plaintiff's plant ten-digit source classification code (SCC) appears to be 2460500000, which is for All Coatings and Related Products within a Consumer/Commercial category. Based on a TexAER system query, a file named "ams.TX_05.area05_b8.hgbpa_04km_8co" is a 2005 estimate of daily area source emissions for the eight-county HGB area. The emissions are reported by five-digit county FIPS code (beginning with 48 for Texas) and ten-digit SCC. The total volatile organic compounds (VOC) emission estimates for the 2460500000 SCC is 6.67 tons per day ("tpd"). The five-digit pollutant code of 43104 is for VOC. After several iterations of

computer processing, the 2005 level of 6.67 tpd becomes 6.88 tpd of VOC for the 2006 SIP. To summarize, the 2006 area source emission estimates for the Houston-Galveston ozone non-attainment area SIP modeling for the 2460500000 SCC is 6.88 tpd of VOC. Plaintiff contributed about 0.052 tpd of this amount.

Plaintiff's plant is, therefore, included in the agency emissions inventory under the area source category.

Later in their letter of November 19, 2014, the TCEQ goes on to state: "In any case, no facility-specific emissions data was reported to the TCEQ point source EI for the year relied upon in the SIP. …therefore, it is not possible to determine if the emission reduction is surplus as required in §101.302(c)(1)(A)."

We believe this rationale is false because:

1.  Plaintiff has demonstrated in its July 21, 2014 emission credit application that it is an area source and it is, therefore, included in the agency emissions inventory under the area source category.

2.  Plaintiff's plant later became a TACB account, when they applied for an air permit in 1993. For this reason, Plaintiff's plant should have been included in the TCEQ's Emissions Inventory database and should have been mailed an emissions inventory request by the TCEQ.

3.  Plaintiff's industry was prescribed as an area source in the SIP, and Plaintiff's plant emitted less than one percent of the total allocation for that industry.

D.    Plaintiff's Implied Violation(s) of TCEQ Regulation(s) by TCEQ

Plaintiff generally denies that it has violated any TCEQ regulation. Plaintiff submitted documentation to the TCEQ with its revised emission credit application on July 21, 2014, which

clarified that Plaintiff was an area source and, therefore, not subject to Emissions Inventory reporting requirements of 30 TAC §101.10.

Additionally, the TCEQ issues thousands of air permits, which contain the clause "acceptance of the permit by the applicant constitutes an acknowledgment and agreement that the permit holder will comply with all rules, regulations, and orders of the commission…." In this attorney's experience, many of these permits, if not the majority, experience some type of rule violation. This attorney, in his experience, has never heard of a case where a permit has been denied because of a violation of emissions inventory requirements (30 TAC §101.10).

E.      Plaintiff Did Not Request To Void Permit Number 22490

Plaintiff did not request to void Permit Number 22490 as required by 30 TAC §101.302, because Plaintiff had previously committed to voiding the permit when it had received assurances from TCEQ that the application for emission credits would be approved. From the record, it is obvious that no such approval has been forthcoming. Therefore, Plaintiff is correct in not voiding the permit until it is assured that such approval will be granted. This is a procedural matter, which can be easily remedied at the appropriate time.

## IX. CONCLUSION

In conclusion, Plaintiff contends the decision by TCEQ to deny Plaintiff's application for certification of emission credits.is fatally flawed and in error for the reasons set forth herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Commission be cited and required to answer and appear herein, that a hearing be held, and that on final hearing hereof, Plaintiff have judgment of the Court as follows:

I.      Reversing and vacating the decision of the Commission and remanding the matter back to the Commission for further consideration and proceedings; and

AC INTERESTS, L.P. FORMERLY
 AMERICAN COATINGS, L.P.   v. TCEQ             18

2.     Awarding Plaintiff costs incurred together with all other relief to which Plaintiff may be

entitled.


Respectfully submitted,


                                        The Law Office of C. William Smalling, PC
                                        1700 Post Oak Blvd., 2 BLVD Place, Suite 600
                                        Houston, TX 77056
                                        Tel: (713) 513 7153
                                        Fax: (866) 738 0042


                                        By: /s/_*Bill Smalling*__
                                        December 10, 2014_____

                                        C. William Smalling
                                        State Bar No. 24075086
                                        bsmalling@billsmallinglaw.com
                                        Attorneys for Plaintiff
.

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on the following via hand delivery, express mail, electronic mail, facsimile, and/or U.S. First Class Mail, on this the 16th day of December, 2014.

(1) The Commission is an agency of the State of Texas. Service on the Commission may be accomplished by delivering a copy of this instrument to Richard Hyde, P.E., Executive Director of TCEQ, at 12100 Park 35 Circle, Austin, Texas, 78753, pursuant to the Texas Clean Air Act, TEX. HEALTH & SAFETY CODE § 382.032.

(2) The TCEQ Executive Director, represented by Caroline Sweeney, P.O. Box 13087, MC-218, Austin, Texas, 78711-3087.

**THE LAW OFFICE OF C. WILLIAM SMALLING, PC**
**1700 Post Oak Boulevard, 2 BLVD Place, Suite 600**
**Houston, Texas 77056**
OFC (713)513-7153 FAX (866)738-0042
December 16, 2014

Mr. Richard Hyde, P.E.
**Executive Director (MC-109)**
Texas Commission on Environmental Quality
12100 Park 35 Circle
Austin, TX 78753

VIA HAND DELIVERY

Re:     AC Interests, L.P. formerly American Coatings, L.P.'s Original Petition; PLAINTIFF v.
        Texas Commission on Environmental Quality, DEFENDANT
        In the District Court of Travis County, Texas.

Dear Mr. Hyde:

Please see attached Plaintiff's Original Petition in the above matter. Please return a file-stamped copy of each to me via my courier.

A copy of the enclosures is being forwarded to all parties of interest as set forth below. Thank you for your assistance in this matter.

Sincerely,

*/s/ Bill Smalling*

Bill Smalling, LL. M., Esq.

Attorney at Law, SBN 24075086

Enclosures

BSm/dm

Cc:     Mr. Jim Morrison, AC Interests, LP.




ENCLOSURES




AC INTERESTS, L.P. FORMERLY
 AMERICAN COATINGS, L.P.   v. TCEQ            21

2/19/2015 9:17:09 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-14-005160

CAUSE NO. \_\_D-1-GN-14-005160_____

| | | |
|---|---|---|
| AC INTERESTS, L.P. FORMERLY AMERICAN COATINGS, L.P. Plaintiff | § § § § | IN THE DISTRICT COURT |
| v. | § § | OF TRAVIS COUNTY, TEXAS |
| TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, Defendant | § § § § | \_53rd\_\_\_ JUDICIAL DISTRICT |

**PLAINTIFF AC INTERESTS, L.P.'s RESPONSE TO DEFENDANT TEXAS COMMISSION ON ENVIRONMENTAL QUALITY'S RULE 91a MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, AC INTERESTS, L.P. ("Plaintiff') and files this its

Response to Defendant Texas Commission on Environmental Quality's Rule 91a

Motion to Dismiss ("Response"). Plaintiff asks the court to deny Defendant's

motion to dismiss and retain Plaintiffs suit on the Court's docket. In support of this

filing, Plaintiff would respectfully show the Court as follows:

## INTRODUCTION

1. Plaintiff is AC INTERESTS, L.P. Defendant is the Texas Commission on

Environmental Quality ("TCEQ" or the "Commission").

2. This lawsuit arises out of a decision by TCEQ to deny Plaintiff's

application for certification of emission credits. The TCEQ's action was taken

"under authority delegated by the executive director of the TCEQ" and signed by

Mr. Steve Hagle, P.E., Deputy Director Office of Air, Texas Commission on

1

Environmental Quality in a letter dated November 19, 2014. This letter was in response to Plaintiff's revised Application for Certification of Emission Credits (Form EC-I) received by the TCEQ on July 23, 2014. The original Form EC-1 was received by the TCEQ on October 17, 2013, with revisions received on November 13, 2013, and April 8, 2014. Substantial rights of Plaintiff have been prejudiced because the decision is in violation of statutory provisions, is in excess of the Commission's statutory authority, and is arbitrary and capricious. Because Plaintiff met the burden of proof that the application for certification of emission credits complies with all legal requirements, the application should have been granted by TCEQ. Instead, the application for certification of emission credits was denied. Plaintiff is seeking judicial review of this decision by TCEQ and is requesting that it be reversed by this Court.

3. A Response was filed in this proceeding on February 19, 2015.

4. This Court has subject-matter jurisdiction over Plaintiffs suit and therefore should retain the suit on the Court's docket and deny Defendant's motion.

## FACTS

5.    On December 10, 2014, Plaintiff electronically filed its Original Petition against the Texas Commission on Environmental Quality ("TCEQ" or the

2

"Commission") with the Travis County District Clerk. On December 12. 2014, a copy of the Original Petition was served on Defendant.[1]

6. Plaintiff's application for certification of emission credits was administratively denied "under authority delegated by the executive director of the TCEQ" and signed by Mr. Steve Hagle, P.E., Deputy Director Office of Air, Texas Commission on Environmental Quality in a letter dated November 19, 2014. This letter was in response to Plaintiff's revised Application for Certification of Emission Credits (Form EC-I) received by the TCEQ on July 23, 2014. The original Form EC-1 was received by the on October 17, 2013, with revisions received on November 13, 2013, and April 8, 2014. This lawsuit was filed on the basis of two assumptions. The first assumption is that pursuant to 30 TAC §50.131(c)(5) the Executive Director was delegated authority to take actions on behalf of the commission under 30 TAC Chapter 101. The second assumption is that Mr. Hagle's letter constitutes final administrative action by the TCEQ. One or both assumptions may in fact be false. A strict reading of 30 TAC §50.131(c)(5) indicates that the Executive Director was not delegated authority to take actions on behalf of the commission under 30 TAC Chapter 101. Additionally, Mr. Hagle's letter does not constitutes final administrative action by the TCEQ, because any

---

[1] Plaintiff asks the Court to take judicial notice of its records to ascertain these facts.

3

action taken by a Deputy Director is appealable to the Executive Director and then likely in this case to the commission. Nonetheless, in the event both assumptions are true, Plaintiff seeks judicial review of the decision by TCEQ in this matter pursuant to the Texas Commission on Environmental Quality, TEX. WATER CODE §5.351 and Texas Clean Air Act, TEX. HEALTH & SAFETY CODE § 382.032(a). Notice was provided to the Executive Director of TCEQ on December 12, 2014, two days after the Original Petition was filed with the Travis County District Court, when a true and correct copy of Plaintiff's Original Petition was served on the Executive Director via hand delivery.

7.      Plaintiff attaches an affidavit to this Response to establish facts not apparent from the record and incorporates that affidavit, all related factual information, and attachments to that affidavit by reference. See Attachment 1, attached hereto and incorporated herein for all purposes.

**ARGUMENT**

8.      Defendant had actual knowledge that the suit had been filed as of December 12, 2014, when a copy of the Original Petition was served on the Executive Director of the Commission. Additionally, pursuant to TEX. WATER CODE §5.353, there is a one year time limit on service of process: "If the plaintiff does not secure proper service of process (pursuant to §5.351) or does not prosecute his suit within one year after it is filed, the court shall presume that the suit has been

4

abandoned." TEX. WATER CODE §5.351 is controlling in this case because it was cited prior to TEX. HEALTH & SAFETY CODE § 382.032(a) in the original pleading.

9.      Plaintiff contends that the service of citation provisions of the TEX. HEALTH & SAFETY CODE § 382.032(c) violate the open courts provision of the Texas Constitution by unreasonably restricting access to the courts by denying it rights to due process and equal protection of the law as guaranteed it by the fourteenth amendment of the United States Constitution. Further, it is Plaintiff contended that § 382.032(c) violates the equal protection guarantee, article I, section 3, and the due process guarantees, article I, section 13, and article I, section 19, of the Texas Constitution. The Texas Constitution contains two separate due process provisions. Article I, section 19, is the traditional due process guarantee, which states: "No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Article I, section 13, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." This provision is sometimes referred to as the "Open Courts Provision," and is a due

5

process guarantee. [2] Both provisions of the Texas Constitution have their origin in

Magna Carta.

TEX. WATER CODE §5.353 takes these concepts into account when it

imposes a one year time limit on service of process. TEX. HEALTH & SAFETY

CODE § 382.032(d) allows the Plaintiff after receiving due notice to "show good

and sufficient cause for the delay." On December 10, 2014, TCEQ proposed rules,

which among other things repeal provisions for generating credits from area and

mobile sources and for use by mobile sources. Also, on December 10, 2014,

Plaintiff electronically filed its Original Petition against the Texas Commission on

Environmental Quality ("TCEQ" or the "Commission") with the Travis County

District Clerk. [3] As stated in Paragraph 6, in a letter dated November 19, 2014, the

TCEQ Deputy Director denied AC Interest's application for emission credits. This

letter was in response to Plaintiff's revised Application for Certification of

Emission Credits (Form EC-I), which was received by the TCEQ on July 23, 2014.

On or about November 21, 2014, the Deputy Director submitted the above

referenced rule proposal to repeal emission credits for area sources to the

commission. In this submission to the commission, the Deputy Director requested

that the commission approve hearings to consider the rule change. After receiving

---

[2] Hanks v. City of Port Arthur, 121 Tex. 202, 48 S.W.2d 944, 945 (1932).
[3] Plaintiff asks the Court to take judicial notice of its records to ascertain these facts.

6

the TCEQ's denial letter dated November 19 (which was postmarked November 21), the Plaintiff's attorney sensed that the TCEQ was about to propose the rule changes, which would repeal emission credits for area sources.[4] Therefore, the Plaintiff's attorney hurriedly assembled the pleading upon which this response is based. The rationale for this was that the Plaintiff's attorney theorized that the "new" rule would be used by the TCEQ to confuse the court into believing that the emission credit rules flatly deny emission credits to area sources. In fact, the "old" rules (the rules prior to the December 10 proposal) expressly allow emission credits to be claimed by area sources. Fortunately, Plaintiff's attorney was able to submit the pleading on the same date as the TCEQ rule change was approved by the commission to go to hearing (December 10, 2014). On December 12, 2014, the Plaintiff's attorney was able to hand deliver a true and correct copy of Plaintiff's Original Petition by serving such on the Executive Director via hand delivery. By this time, the Plaintiff's attorney was so backlogged with other work that he did not have time to secure service of process. This should meet the TEX. HEALTH & SAFETY CODE § 382.032(d) allowance to "show good and sufficient cause for the delay." At any rate, TEX. WATER CODE §5.353 prescribes an allowance for this delay by imposing a one year time limit on service of process.

---

[4] The Plaintiff's attorney had attended at least one stakeholder meeting relative to the repeal of area source emission credits.

Also, the Plaintiff's right of redress outweighed the legislative basis for the respective ordinances and statute. The right to bring a well-established common law cause of action cannot be effectively abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of the constitutionally-guaranteed right of redress. [5] Certainly AC Interest's reasonable argument as described in paragraph 11 far outweighs the Texas Clean Air Act § 382.032(c)'s 30 day time limit.

10. The cited TJFA, L.P. v. TCEQ lawsuit only pleaded a lawsuit under TEX. HEALTH & SAFETY CODE § 362.321(c) [6], which requires service within 30 days. Nonetheless, § 362.321(c) would be subject to the same constitutionality question as § 382.032(c) as described in paragraph 9.

11. On January 27, 2015, TCEQ filed a motion pursuant to Texas Rule of Civil Procedure (TRCP) 91a stating "Even taking AC Interests' factual allegations as true, there is no basis in law for the Court to grant any of the relief AC Interests seeks by any of its causes of action." TRCP 91a.1 states:

> ....a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded. [7]

---

[5] Sax v. Voettler, 648 S.W.2d 661 (Tex. 1983).
[6] 368 S.W.3d 727.
[7] TRCP 91a.1.

In this case, this rule is not on point because on December 10, 2014, TCEQ proposed rules, which among other things repeal provisions for generating credits from area and mobile sources and for use by mobile sources. In the preproposal phase of the rule making process, several highly reasonable entities or persons [8] made comments paraphrased as follows.

> Area sources should remain in the banking rules and no changes should be required. Area sources are an important source of ERCs to the regulated community. It is also important that area sources be allowed to earn revenue from the generation of emission reductions beyond reduction requirements currently in the rules.

> Texas' shale gas reserves and the revitalized domestic oil and gas industry has created a long-term supply of competitive natural gas. This has contributed to a huge expansion of the Texas Gulf Coast petrochemical and plastics manufacturing base. The existing Texas Gulf Coast petrochemical and refining infrastructure is also attracting the interest of major global chemical companies from outside the U.S.

> A major hurdle for these developments is TCEQ's and EPA's designation of the Houston ("HGB") area as a severe ozone nonattainment area (O3 NAA). Without diverting into great detail, because of the O3 NAA requirements, any new or expanded manufacturing plant must offset its new emissions by 130% before it can be permitted and constructed. This can be satisfied with ERCs, which are generated by permanently reducing emissions at existing sources in the HGB area. Pursuant to current TCEQ rules ERCs can be generated by large plants or, in theory and according to the rule language, area sources committing to facility reductions. The ERC rules clearly allow area sources to generate ERCs. The TCEQ staff, to date, has arbitrarily not approved any area source ERC applications.

---

[8] *Area Source Emission Reduction Credits (ERCs)*; Submitted by R. Kinnan Golemon, President, KG Strategies, LLC (Undated). *Emissions Banking and Trading Stakeholder Group*; Sage Environmental Consulting, L.P. (April 4, 2014). *TCEQ Emissions Banking & Trading Program Stakeholder Group & Future Rulemaking*; Texas Chemical Council (April 4, 2014).

The EPA is proposing to revise the ozone NAAQS to around 70 ppb. This revision is scheduled to be finalized in October 2015. This expected event makes the timing of the TCEQ staff's proposal to eliminate the potentiality of emission credits from area and mobile sources appear curious. The combination of the reduction in ozone standard, which simultaneously would drive up demand for ERCs and drive down the availability of ERCs, and the removal of obtainability of ERCs from area and mobile sources in NAAs will cause the price of ERCs in the HGB area to skyrocket. Added to this is the likelihood that the prices of crude oil and natural gas will rebound in around nine months. When one sums these factors together, the price of ERCs in the HGB area may be enough to drive industry out of state and overseas.

These are arguments that others, in addition to AC Interests, have made to allow area sources such as AC Interests to obtain emission reduction credits. The arguments are so reasonable, in fact that the TCEQ does not want to try the arguments on the merits of the case.

## CONCLUSION AND PRAYER

12.     Because Plaintiff's pleadings establish the reasonableness of the Plaintiff's

argument, Plaintiff asks the court to deny Defendant's motion to dismiss and retain

Plaintiffs suit on the Court's docket. For these reasons, Plaintiff prays that a hearing

be held and after such hearing the Court deny Defendant's Rule 91a Motion to

Dismiss and retain Plaintiff's suit on the Court's docket.


Respectfully submitted,

/s/ *[signature]*

C. William Smalling
bsmalling@billsmallinglaw.com
The Law Office of C. William Smalling PC
1700 Post Oak Blvd., 2 BLVD Place, Suite 600 Houston,
TX 77056
Attorneys for AC Interests, L.P.

CAUSE NO. __D-1-GN-14-005160__
AC INTERESTS, L.P.'s RESPONSE TO TCEQ's
RULE 91a MOTION TO DISMISS

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on

the following via hand delivery, express mail, electronic mail, facsimile, and/or

U.S. First Class Mail, on this the __19__ th day of February, 2015.

CYNTHIA WOELK
Assistant Attorney General
State Bar No. 21836525
Cynthia.Woelk@texasattorneygeneral.gov

ANTHONY GRIGSBY
Assistant Attorney General
State Bar No. 08491500
Anthony.Grigsby@texasattorneygeneral.gov

Environmental Protection Div. (MC-066)
P.O. Box 12548
Austin, Texas 78711-2548
Vox: (512) 463-2012
Fax: (512) 320-0911

ATTORNEYS FOR TEXAS
COMMISSION ON ENVIRONMENTAL
QUALITY

## AFFIDAVIT OF C. WILLIAM SMALLING

| STATE OF TEXAS | § |
| | § |
| COUNTY OF FORT BEND | § |

**BEFORE ME,** the undersigned notary, on this day personally appeared Mr. C. William Smalling, a person whose identity is known to me. After I administered an oath to him, upon his oath he said:

1. My name is C. William Smalling. I am over eighteen years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am a shareholder with The Law Office of C. William Smalling, PC ("TLOOCWS"). I am the attorney of record for AC Interests, L.P., and Plaintiff in Cause No. D-1-GN-14-005160, AC Interests, L.P. v. Texas Commission on Environmental Quality.

3. On December 10, 2014, on behalf of Plaintiff, TLOOCWS electronically filed Plaintiff s Original Petition against the Texas Commission on Environmental Quality ("Defendant" or the "Commission") with the Travis County District Clerk.

4. On December 12, 2014, a copy of the Original Petition was served on Defendant, the Commission. A true and correct copy of the Original Petition was served on the Executive Director of the Commission via hand delivery, as shown by the Commission's file stamp receipt. See Attachment 1, providing a true and

13

correct copy of the Original Petition, except for the handwritten cause number and judicial district, which were added after service.

FURTHER, AFFIANT SAITH NOT.

/s/ _C. William (Bill) Smalling_

C. William Smalling

SUBSCRIBED AND SWORN TO BEFORE ME by Mr. C. William Smalling on the _19_ th day of February, 2015, to certify which witness my hand and seal.



NOTARY PUBLIC
STATE OF TEXAS

ANAR GHESANI
My Commission Expires
April 20, 2016

# APPENDIX 9

Thu 6/30/2016 3:57 PM

Texas Commission on Environmental Quality [tceq@service.govdelivery.com](mailto:tceq@service.govdelivery.com)

Emissions Banking and Trading Meeting Announcement

Meetings have been scheduled to discuss and seek input on issues for consideration during upcoming revisions to the Emissions Banking and Trading (EBT) rules in 30 Texas Administrative Code Chapter 101, Subchapter H, Divisions 1 and 4. The meetings will focus specifically on potential rule amendments regarding the generation and use of emission credits from area and mobile sources.

The meetings are open to the public and anyone interested may attend. Meetings are scheduled for:

- Houston: July 20, 2016, 2:00 pm, Texas Department of Transportation (TxDOT) Auditorium, 7600 Washington Avenue, Houston, TX 77007;

- Dallas-Fort Worth: July 21, 2016, 2:00 pm, The Regional Forum Room at North Central Texas Council of Governments, 616 Six Flags Drive, Arlington, TX 76011; and

- Austin: July 25, 2016, 9:30 am, TCEQ Headquarters, Building F, Room 2210, 12100 Park 35 Circle, Austin, TX 78753.

The current EBT rules allow an area or mobile source to generate emission reduction credits (ERCs) from emission reductions that are demonstrated to be real, quantifiable, permanent, enforceable, and surplus to the state implantation plan (SIP) and all applicable rules, and discrete emission reduction credits (DERCs) from reductions that are real, quantifiable, and surplus to the SIP and all applicable rules. To address implementation issues associated with generation and use of area and mobile credits and how the United States Environmental Protection Agency (EPA) and Federal Clean Air Act (FCAA) requirements are met, the TCEQ is considering potential new requirements related to:

- the types of sources that would be eligible to generate credits;

- the quantity of credits that could be generated by area and mobile sources;

- the timeframe for credit generation; and

- recordkeeping and reporting.

For more information about these meetings, contact [Guy.Hoffman@tceq.texas.gov](mailto:Guy.Hoffman@tceq.texas.gov) or [Daphne.McMurrer@tceq.texas.gov](mailto:Daphne.McMurrer@tceq.texas.gov).